[No. 6946.  Decided May 28, 1908.]

CHARLES THEIS, *Respondent*, v. SPOKANE FALLS GAS LIGHT
COMPANY *et al., Appellants*, N. W. HALSEY
*et al., Defendants.*[1]

CORPORATIONS—GAS—FRANCHISES—COMBINATIONS — CONSTRUCTION
—IMPLIED REPEAL.  An ordinance granting a franchise to a gas
company, which forbids any combination with any competitor under
penalty of forfeiture of the franchise, is, as to such penalty, im-
pliedly repealed by a later ordinance granting a franchise to another
gas company expressly authorizing a combination with the old
company.

SAME — REPRESENTATION — ACTS ULTRA VIRES — COMBINATIONS—
STOCKHOLDERS—RIGHTS OF MINORITY.  Minority stockholders of a
gas company having a franchise to manufacture and sell gas to con-
sumers cannot object that the action of the officers and majority
stockholders in entering into an arrangement to purchase gas from
a new company controlled by such officers and stockholders is ultra
vires, the old company having power to "purchase real and personal
property," and the two companies being authorized by their fran-
chises to combine.

SAME—INJURY TO MINORITY—EVIDENCE—SUFFICIENCY.  A stock-
holder owning eight out of fifteen hundred shares of the capital
stock of a gas company cannot complain of the action of the officers
controlling all the other shares in making a contract with a new
gas company controlled by them whereby the old company was to
purchase all its gas from the new company, organized by them to
furnish the same, rather than borrow money to enable the old com-
pany to enlarge its business to meet growing demands, where it
appears that the old company thereby obtained its gas at a saving
of over twenty thousand dollars less expense per year than it could
manufacture the same for in its own plant, and that its affairs were
economically managed; since the discretion of the majority in de-
ciding not to increase the capacity of the old company is an act
*intra vires* that cannot be questioned by the minority.

RUDKIN and DUNBAR, JJ., dissenting.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered May 18, 1907, upon findings in
favor of the plaintiff, after a trial on the merits before the

[1]Reported in 95 Pac. 1074.

court without a jury, in an action brought by a stockholder to enjoin the union and consolidation of two corporations. Reversed.

*Gallagher & Thayer (W. J. Thayer, Franklin W. M. Cutcheon,* and *Augustine L. Humes,* of counsel), for appellants.

*Post, Avery & Higgins,* for respondent, contended, among other things, that the plaintiff has a right to injunctive relief against any action or attitude that might endanger the existence of the corporation or destruction or loss of valuable property or rights. *Manderson v. Commercial Bank of Pennsylvania,* 28 Pa. St. 379; *Bliss v. Anderson,* 31 Ala. 612, 70 Am. Dec. 511. The combination threatened the forfeiture of the franchise. *Pearsall v. Great Northern R. Co.,* 161 U. S. 646, 16 Sup. Ct. 705, 40 L. Ed. 838; *Fertilizing Co. v. Hyde Park,* 97 U. S. 659, 24 L. Ed. 1036; *People v. North River Sugar Ref. Co.,* 121 N. Y. 582, 24 N. E. 834, 18 Am. St. 843, 9 L. R. A. 33; *United States v. Northern Securities Co.,* 120 Fed. 721. The two companies were competing companies. *Louisville & N. R. Co. v. Kentucky,* 161 U. S. 677, 16 Sup. Ct. 714, 40 L. Ed. 849.

Root, J.—Plaintiff, as the owner of eight shares of the capital stock of the Spokane Falls Gas Light Company (hereinafter called the Spokane company), brought this action, in behalf of himself and all others similarly situated and in behalf of the company, against the defendants, to nullify an arrangement made by some of the defendants while acting as trustees, agents, and majority stockholders in this corporation and another known as The Union Gas Company, whereby, it was alleged by plaintiff, the business and development of the Spokane company were to be stunted, its franchise forfeited, and its business and property destroyed. From a judgment and decree in plaintiff's favor, several of the defendants appeal.

The trial court made findings of fact which we will set forth in full:

"(1)    That the defendant Spokane Falls Gas Light Company is, and has been for more than fifteen years last past, a corporation organized under the laws of the state of Washington, for the sole object and purpose, as provided by its articles of incorporation, of manufacturing and selling illuminating and non-illuminating gas and the residuary products arising therefrom in the city of Spokane Falls (now Spokane), in Spokane county, state of Washington, with the usual powers as to purchasing, erecting and operating gas works and houses, laying mains, etc., under contracts with the said city of Spokane, a municipal corporation and with power to borrow money, issue bonds and other evidences of indebtedness, secured by mortgage upon its entire property, or otherwise, that it has been engaged in such business in the city of Spokane, during all of said time and is now so engaged; that the plaintiff is, and has been for more than two years last past, the owner and holder of eight shares of the capital stock of said corporation; that the total issue of said capital stock is fifteen hundred shares of the par value of one hundred dollars ($100) each.

"(2)    That according to the articles of incorporation the Board of Trustees consists of five members, and at the time of the commencement of this action said Board consisted of the defendants Anderson, Murphy, Twohy, Aldrich and Nicholls; and during the pendency of the said action Aldrich was succeeded by one Gimper; that defendant Murphy was and is president, and at the time of the commencement of the action the defendant Aldrich was secretary and treasurer, and he was thereafter succeeded in said office by said Gimper.

"(3)    That the Spokane Falls Gas Light Company is the owner of several valuable pieces of real estate in the city of Spokane and a gas manufacturing plant, with many miles of mains, extensions, surface pipes and appliances usual in the business of manufacturing and supplying pipes and appliances usual in the business of manufacturing and supplying gas; it is also the owner of a franchise from the city of Spokane, referred to in paragraph 3 of the complaint; that prior to the passage of such ordinance said corporation had been acting under another ordinance granted by the city of Spokane, which has expired, and the sole authority of the

corporation for using the streets and alleys of said city for laying and maintaining of mains and pipes is the ordinance described in said paragraph three of the complaint, that said corporation was the only corporation engaged in said gas business in the city of Spokane until the formation of the defendant The Union Gas Company.

"(4)    The defendant Spokane Falls Gas Light Company is a prosperous and solvent corporation having no bonded or other indebtedness, except a small sum in the form of bills payable; that its property and assets are worth in excess of the sum of five hundred thousand dollars ($500,000), and it is making annually a net income over and above all expenses of a sum in excess of thirty thousand dollars ($30,000).

"(5)    That there is an express prohibition in the ordinance referred to in paragraph three of the complaint, against any union or combination of any kind or character between the Spokane Falls Gas Light Company and any other gas company doing business in the city of Spokane, which provision is section 7 of said ordinance, and is as follows, to-wit: 'Sec. 7.    If at any time after the acceptance of this franchise by the grantees herein, and before the expiration thereof, the person, association or company operating under this franchise or selling gas thereunder in said city, shall either directly or indirectly, unite or combine with a competing company, institution or person furnishing light in said city, whether such uniting or combining be through the sale of property, or of stock or in any way, an absolute forfeiture of this franchise and all of its terms and provisions shall, at the option of said city, be declared, and a suit for such forfeiture may be brought in a court of proper jurisdiction, and such court may in such suit order and decree said franchise forfeited absolutely to said city.    It is the expressed intention of this section to prevent the destruction or limiting of competition in the business of furnishing light to the said city or its inhabitants.'

"(6)    That on May 12th, 1904, there was passed by the city council of the city of Spokane an ordinance entitled: 'An Ordinance authorizing Roger H. Williams, his associates, heirs, successors and assigns, to maintain and operate a plant for the manufacture and sale and distribution of illuminating and fuel gas, and their by-products, and to use the streets and

alleys of the city of Spokane therefor, and providing for the consideration to be paid for said privilege,' which ordinance went into effect in June, 1904, and was accepted by said Roger H. Williams; that by said ordinance said Williams and his assigns, were authorized to erect and maintain and operate a complete plant for the manufacture, sale and distribution of illuminating and fuel gas and their by-products, within the limits of the city of Spokane, and to lay pipes therefor throughout the streets and alleys of said city; that thereafter said Williams, or his associates, erected a plant sufficient for the manufacture of two thousand cubic feet of gas for every twenty-four hours, and have laid several miles of mains thereunder in the streets of said city; that said Williams and his principals caused a corporation to be formed with power to manufacture and sell gas in the city of Spokane under the laws of the state of West Virginia, and the rights, privileges, and authorities granted by said ordinance were assigned to said corporation before the commencement of this action, and there was also transferred to said corporation the manufacturing plant, mains and real estate described above in this paragraph.

"(7)   That before the attempted transfer of stock hereinafter referred to, to the defendant The Union Gas Company, at least 1486 shares out of the total issue of fifteen hundred shares of the capital stock of the Spokane Falls Gas Light Company were owned by the defendants N. W. Halsey, Isaac W. Anderson and associates of theirs commonly known as the Halsey Syndicate, which syndicate was controlled by said Halsey and Anderson with plenary powers.   A short time after the formation of the corporation The Union Gas Company (which was formed by said Halsey syndicate) and after that corporation had acquired the Williams' franchise and the gas manufacturing plant referred to in the preceding paragraph, the owners of said stock assigned the same to said The Union Gas Company and that corporation took physical possession thereof; that at such time the officers of The Union Gas Company were the agents or representatives of said syndicate and the ownership of a majority of the stock of the Union Gas Company was vested in said syndicate and the business manager thereof was the defendant Anderson and said Roger H. Williams was at all times merely the agent of said syndicate.

31—49 WASH.

"(8)  That the trustees of the Spokane Falls Gas Light Company have no personal interest in said corporation, that they are not stockholders therein, except that each has one share of stock placed in his name on the books of said corporation, of which he is not actually the owner; that each and every member of said board of trustees, and each of the officers of said corporation, is dominated and controlled by the defendant The Union Gas Company, and each and all of them are now acting in the interest of that corporation and are managing the Spokane Falls Gas Light Company for the benefit and advantage and exclusively in the interest of The Union Gas Company, and such was the condition of affairs, at the time of the commencement of this action that it was not incumbent upon the plaintiff to ask the Board of trustees, or any of the officers of the Spokane Falls Gas Light Company to bring this action or take any other steps for the protection of that corporation because so to do would be a vain and useless thing.

"(9)  That a short time before the commencement of this action, the defendant The Union Gas Company, executed an instrument in writing in the form of a mortgage running to the defendant United States Mortgage & Trust Company, a corporation organized under the laws of the state of New York and to George M. Cumming, who is a non-resident of the state of Washington and a resident either of New York or some other state on the Atlantic Coast, under which instrument The Union Gas Company attempts to create a lien upon the entire property of that corporation, including the 1486 shares of the capital stock of the Spokane Falls Gas Light Company; that said mortgage purports to secure bonds of the total issue of one million dollars, running for thirty years, bearing interest at five per cent. and it is provided therein that bonds to the amount of four hundred thousand dollars shall be issued at once to pay for the stock in the Spokane Falls Gas Light Company above mentioned; that before the commencement of this action bonds to the amount of four hundred thousand dollars were delivered to defendant Halsey, but none of the same had been sold or delivered to any third parties; that said mortgage, among other things, provides, and in said mortgage The Union Gas Company contracts and covenants, that said stock of the Spokane Gas Light Company, to wit: 1486 shares, shall never be voted

to authorize any mortgage or other lien upon the property of the Spokane Falls Gas Light Company, unless said mortgage shall be given to the Union Gas Company; and further, that said stock shall never be voted to authorize any increase in the capital stock of the Spokane Falls Gas Light Company for any purpose whatsoever; and further, that said stock shall never be voted to authorize the selling or leasing of the property of the Spokane Falls Gas Light Company to any person or corporation for any purpose or under any circumstances, unless such sale or lease shall be made to The Union Gas Company; that before the commencement of this action said Halsey was offering said bonds for sale in open market; that before the commencement of this action The Union Gas Company had commenced to manufacture gas and had been manufacturing the same for a period of about two weeks.

"(10)   That notwithstanding the city of Spokane has been growing with great rapidity and the business of the Spokane Falls Gas Light Company increased to a considerable extent before the formation of The Union Gas Company, and although the older corporation had no bonded or other indebtedness and was a solvent and prosperous concern, nothing was done by the officers of that corporation or permitted to be done by the 'Halsey Syndicate' or The Union Gas Company toward increasing its manufacturing plant, all of which was without excuse.   But a few days before the commencement of this action a resolution was passed at a meeting of the so-called Board of Trustees of that corporation authorizing the secretary to enter into a contract with The Union Gas Company, whereby there would be a physical connection between the two plants and whereby the older corporation would purchase gas manufactured in the plant of The Union Gas Company and distribute the same through its mains and sell the same to its customers, and a few days before the commencement of this action such physical connection was made and at the time of the commencement of this action the Spokane Falls Gas Light Company was taking gas from The Union Gas Company and selling the same to its customers; that at that time it was contended by its officers that it was only purchasing from The Union Gas Company such surplus as it needed to supply its customers over and above the gas manufactured in its own plant, but during the pendency of this action for a time ceased without any cause or

excuse to manufacture any gas in its own plant and has been selling to its customers all of the gas manufactured in the plant of The Union Gas Company and manufactured as little gas in its own plant as possible; that no formal contract was entered into and no price was agreed upon; that in making this arrangement The Union Gas Company was represented by the defendant Anderson; that before such arrangement was entered into the plaintiff notified the officers of the Spokane Falls Gas Light Company that such an arrangement would be invalid and that he would protest against the same, and was advised by them that they had no knowledge as to such arrangement being made or contemplated; that in the early part of 1903 said 'Halsey Syndicate,' having purchased more than two-thirds of the stock of the Spokane Falls Gas Light Company, entered upon a scheme to put an end to the life of that corporation and cause its property to be sold to themselves, and in May, 1903, this plaintiff commenced an action to restrain the sale of the entire property of that corporation and to prevent its destruction and annihilation, and after long litigation that action was decided in favor of the plaintiff by the supreme court of this state; that thereafter the said 'Halsey Syndicate' caused said Roger H. Williams to apply for the franchise hereinbefore referred to and entered upon the scheme outlined above, whereby there was issued to themselves bonds to the amount of four hundred thousand dollars, and contracts were entered into and proceedings taken to stunt the older corporation, stop its growth and prevent its enlargement, for the benefit of themselves and the other corporation The Union Gas Company.

"(11)    That the franchise, rights and privileges granted to the Spokane Falls Gas Light Company under the ordinance referred to in paragraph three of the complaint, were of great value, and without the privilege of maintaining pipes in the City of Spokane the property of said corporation would be without any practical value whatsoever, and the attempted union or combination between these corporations, in violation of section 7 of said ordinance referred to above, jeopardizes the entire property and assets of the older corporation and subjects said franchise to being forfeited at the instance of the city of Spokane.

"(12)    That the United States Mortgage and Trust Company and George M. Cumming have no personal interest in

said bonds, mortgage or stock and no personal interest in the matter in controversy in this action, but are merely naked trustees under said mortgage or trust deed; that this action is brought on behalf of that defendant the Spokane Falls Gas Light Company and of all other stockholders similarly situated as well as on behalf of the plaintiff.

"(13)   That the attorneys of record herein were the attorneys employed by plaintiff to conduct this litigation; that no definite amount of compensation was agreed upon between the plaintiff and his attorneys, but said attorneys were to be paid a reasonable compensation, and such liability to said attorneys has been incurred by plaintiff; that such reasonable compensation. for services in this action up to the signing of the decree herein is the sum of twenty-five hundred dollars ($2,500)."

The following findings were made at the request of defendants:

"That the net earnings of Spokane Falls Gas Light Company have ever since the year 1904 amounted to between $30,000 and $40,000 per year, and ever since said time all of said net earnings have been expended by the Spokane Falls Gas Light Company in betterments and improvements of its property in the city of Spokane, principally in mains and meters.

"That said last-named company now has about fifty miles of main in the city of Spokane, and during the year 1906 it built between fifteen and twenty miles of main and paid for same out of its net earnings.

"Said Spokane Falls Gas Light Company does not pay any of its officers any salary except the salary paid to the secretary, who has active charge of the business of the company.

"That under the arrangement between the Spokane Falls Gas Light Company and The Union Gas Company which existed at the time of the commencement of this action, and under which the former purchased gas from the latter, the former company obtained its gas for over twenty thousand dollars less expense per year than it could manufacture same in its own plant, and said two companies have at all times been willing to enter into a permanent contract by which the Spokane Falls Gas Light Company would have the use of all

of The Union Gas Company's mains, and all the gas manufactured by it, during the existence of the franchise of the Spokane Falls Gas Light Company, which has still thirty-eight years to run. And said two companies would have made a permanent contract giving the Spokane Falls Gas Light Company the use of said mains and gas for said length of time had it not been for the opposition of plaintiff and the injunction of this court forbidding the making of a permanent contract between the two companies.

"That the mortgage referred to in plaintiff's complaint herein provides that The Union Gas Company may vote all of the shares of stock in the Spokane Falls Gas Light Company which purport to be covered by said mortgage or pledge therein except that the voting power upon said pledged stock or any of it shall not, in any case or at any time be used or exercised for the purpose of authorizing the creation of any lien or charge upon the properties or franchises of the Spokane Falls Gas Light Co., except to secure the unpaid purchase money of additional property which may be acquired by said last-mentioned company, nor for the purpose of authorizing the sale or lease of the property of the Spokane Falls Gas Light Company except to The Union Gas Company, nor to increase the capital stock of the Spokane Falls Gas Light Co., nor to authorize the creation of any indebtedness except current operating accounts, nor the issue or guarantee of any other obligations or of any bonds by said last-mentioned company; nor the creation of any mortgage or other lien upon the property of said Spokane Falls Gas Light Co. except to The Union Gas Company."

Defendant excepted to many of the findings made by the court upon its own motion or upon the request of plaintiff, and plaintiff excepted to some of those made at the request of defendants. We think, however, that the material findings, except such as are virtually conclusions of law or inferences drawn from other facts found, and excepting those ascribing improper motives or purposes to defendants in the matters mentioned, are fairly supported by the evidence.

In addition to those set forth in the findings, we may mention the following pertinent facts established by the evidence: The franchise of the Union company had a restriction

similar to that of § 7 of the Spokane company's franchise.
This restriction, however, had a proviso in these words:

"Provided, nevertheless, that no merger, consolidation, com-
bination, or union of interests, whether entire or partial
between the grantees under this ordinance and the Spokane
Falls Gas Light Company, its successors or assigns, shall be
prohibited by this ordinance, or be a ground for the forfeiture
of any of the rights or privileges hereby granted, but in case
of such merger, then the franchise granted to the Spokane
Falls Gas Light Company, by ordinance A-1162 passed May
6th, 1902, shall cease and determine; said ordinance No.
A-1162 shall be repealed, and said Spokane Falls Gas Light
Company and the grantees under this ordinance, shall there-
after operate under the provisions of this ordinance."

When the ordinance granting this franchise was first passed
by the city council, it was vetoed by the mayor, one of the
grounds for his disapproval being that the recipient or user
of the franchise was not to be a competitor of the Spokane
company.  The city council then passed the ordinance over
the mayor's veto.  It was shown that the rapid growth of the
city of Spokane had occasioned a demand for gas in excess of
the amount which the Spokane company was capable of pro-
ducing without expensive repairing and costly enlargement
of its plant; that the making of these betterments would have
necessitated the incurring of a heavy indebtedness by the
company; that the manufacturing plant was near the center
of the city where the land necessary to be purchased for an
increase in the size of the plant was very expensive; that the
Union company never sold or supplied any gas to any one
except the Spokane company.  Upon the findings the trial
court made conclusions of law and, in accordance therewith,
entered a decree, in substance that the Spokane company and
The Union Gas Company, their officers, agents and servants
be perpetually enjoined from making and continuing the
physical connection between the two plants; that the existing
physical connection be severed, and that the Spokane com-
pany, its officers, agents and servants, be perpetually enjoined

from purchasing, taking, using, or selling any gas manufactured in the plant of The Union Gas Company and from making or permitting any combination, union, or consolidation with The Union Gas Company, or with its plant or properties; that the Spokane company, its officers, agents, and servants, be perpetually restrained from recognizing the transfer of stock to The Union Gas Company, from permitting it or any agent, servant, assignee, "or trustee thereof from voting any such stock," "from permitting any pledgee or assignee of a pledgee under any mortgage or contract executed by The Union Gas Company" to vote any such stock and from paying dividends thereon to any such person; and further that The Union Gas Company and the United States Mortgage and Trust Company, their officers, agents, servants and trustees and all claiming under them be enjoined from so voting or attempting to collect any dividends; provided, that The Union Gas Company or its pledgee might sell the stock if sold to a person in no manner representing The Union Gas Company; that the Spokane company should only recognize the holders of stock not falling within the previously stated prohibitions, and that a decision of the majority of the voting stock permitted to vote should control on all questions; that the plaintiff recover from the defendant, the Spokane company, in addition to its costs and disbursements, an attorney's fee of $2,500; that the defendants should not be required to sever the physical connection existing between the plants of the two companies, nor the Spokane company to cease using and selling gas manufactured in the plant of The Union Gas Company, for the period of nine months from the date of the decree, and that if the defendants should within ten days take an appeal to this court that then the defendants should not be required to discontinue the physical connection nor cease using and selling gas manufactured in the plant of The Union Gas Company until the expiration of nine months after the decision of this court and the filing of the remittitur from this court with the clerk of the court below.

In the able and elaborate briefs of counsel for the respective parties, many questions are discussed that will not require discussion by us.  They are all involved in, or subordinate to, what we conceive to be the paramount question of the case, to wit:  Does the arrangement entered into by the officers of these two corporations constitute an illegal combination, or amount to a fraud upon respondent as a minority stockholder in the Spokane company, or infringe his rights, or unlawfully destroy or lessen the value of his property as such stockholder? Respondent urges that § 7 of the franchise of the Spokane company forbids any arrangement such as was made by these two companies, and provides a forfeiture of the franchise therefor, at the option of the city; that the franchise is very valuable, and that its liability to forfeiture can be obviated only by a disavowal on the part of the stockholders of the company.  Appellants urge that § 7 does not forbid such an arrangement, that it forbids any combination with a *"competing"* company, institution, or person *furnishing light in said city,"* but that the Union company is not a "competing" company, never was, and did not intend to be when it secured its franchise, and has never furnished light to any one except the Spokane company.  They maintain that a "competing" company is one that competes; that was intended to compete. Besides the dictionary definition of the term, they cite *Mogul Steamship Co. v. McGregor,* 23 Q. B. D. 598; Eddy, Combinations, § 190; *Ferd Heim Brewing Co. v. Belinder,* 97 Mo. App. 64, 71 S. W. 691; *Moores & Co. v. Bricklayers' Union,* 23 Weekly Law B. 48, 10 Ohio Dec. 665; *Kimball v. Atchison etc. R. Co.,* 46 Fed. 888.  Respondent argues that the expression "competing company," as found in the ordinance, means any company having the power to compete, and cites in support thereof *Louisville & N. R. Co. v. Kentucky,* 161 U. S. 677, 16 Sup Ct. 714, 40 L. Ed. 849.

Assuming, without deciding, that these are competing companies, we will pass to the question of whether the franchises of the two companies construed together, or that of the old, inter-

preted in the light of the new, forbids such a combination or
arrangement as was here made.  Section 8½ of the ordinance
granting the franchise to the Union company expressly au-
thorizes this company to merge, consolidate, or combine,
wholly or partially, with the Spokane company.  Appellants
maintain that if the Union company is so authorized to do, it
necessarily follows that the Spokane company is likewise
authorized.  Respondent disputes this.  He refers to the word-
ing of § 8½, where it says no combination, etc., "shall be
prohibited *by this ordinance*, or be a ground for a forfeiture
of any of the rights or privileges *hereby granted*," and calls
special attention to the words above italicized, insisting that
said words indicate a limitation and exclude the idea that
there was any intention to waive or modify the restrictions in
§ 7 of the Spokane company's franchise.

We are constrained to differ with respondent as to the con-
struction to be placed upon the language of the two sections
under consideration.  The Union company's franchise was
passed long after that of the Spokane company.  Hence, if
there be such a conflict or inconsistency in the provisions of
the two as calls for the yielding of those in one or the other,
those of the older ordinance must give way.  Section 7 in the
franchise of the old company absolutely forbids any combina-
tion with any competitor and prescribes forfeiture as a
penalty.  Section 8½ of the new company's franchise has the
same restriction, followed, however, by a proviso expressly
authorizing such combination with the old company.  It is
conceded that the new company was given the power by its
franchise to make a combination with the old company.  This
being conceded, how can it be said that the old company was
not thereby permitted to enter such a combination with the
new company?  Suppose the legislature should by statute
provide that no white man should marry an Indian woman,
and suppose the next session of the legislature should enact
that every Indian woman was authorized to marry a white
man.  Would not the latter statute repeal the former?  Or

suppose the legislature should forbid merchants from selling firearms to minors, and at a subsequent session should enact a law saying that boys over eighteen were authorized to purchase firearms of any merchant. Would there be any doubt that the former statute was modified in so far as it applied to boys over eighteen? So, in this case. When the city council by ordinance gave the new company permission to make a combination with the old company, it impliedly authorized the latter to participate in that combination. The very fact of combination necessarily involves co-operation. It would seem to involve an absurdity to say to the new company, "You may combine with the old company, but it cannot combine with you." A corporation cannot combine with itself, nor can it combine with another without co-operation on the part of that other. By the enactment of the ordinance giving the Union company authority to combine with the Spokane company, the city authorized the latter to enter and be a party to such combination, or at least estopped itself from asserting a forfeiture on account thereof. *Spokane Street R. Co. v. Spokane Falls*, 6 Wash. 521, 33 Pac. 1072; *Commercial Elec. L. & P. Co. v. Tacoma*, 17 Wash. 661, 50 Pac. 592; *Fox v. Harding*, 61 Mass. 516; *Farlow v. Ellis*, 81 Mass. 229; 29 Am. & Eng. Ency. Law (2d ed.), 1095, 1103; 16 Cyc. 749, 781-2; 8 Current Law, 1075.

It is not contended, as we understand, that a merger has occurred. In case of merger, it is provided that both companies may act under the terms of the franchise granted the Union company. If the trustees and majority of the stockholders deemed it best for the company to exchange its franchise for that of the new company, we know of no reason why they would not have power to so do in the absence of fraud or unfairness. *Symmes v. Union Trust Co.*, 60 Fed. 830.

The two companies having the right to combine, did the arrangement made infringe the legal rights of respondent? It is urged that the Spokane company had no power to pur-

chase gas; that in doing so it was acting *ultra vires*.  A corporation being an intangible creature must act through agencies.  This company could hire a man or men by the day, week, or month to manufacture the gas which it was to distribute and sell.  If it could pay by the day or week or month for having its gas made, we see no reason why it could not pay by the cubic foot.  If it could furnish the material and plant and pay its workmen so much per cubic foot for the gas manufactured, we do not see why it might not with propriety hire men or another company to supply the material and plant or some portion thereof, and pay by the cubic foot for the gas made and delivered to it.  It is urged that this is a public service corporation and that the public has an interest in having the company exercise its functions, one of which is to manufacture the gas it sells.  The public is not a party to this suit; but if it were, it would doubtless be a sufficient answer to say that the public is principally interested in the results rather than the methods of the furnishing to it of gas. If the right quality of gas is supplied to the people at a reasonable price when and where it should be, the public is not ordinarily concerned as to where the supplying company obtains the gas.  Matters of price, quality and quantity concern consumers much more than source of supply.  We think the old company had authority to purchase from the new any gas it deemed necessary or advisable, so long as it did not pay too much therefor, and there is no question of that kind here.

Appellants contend that the general powers to "purchase . . . real and personal property," conferred by Bal. Code, § 4253 (P. C. § 7058), authorize the purchase of gas by this company.  Appellants in their brief claim to have offered to file a supplemental answer setting forth that the articles of incorporation of the Spokane company had been amended so as to expressly authorize it to purchase gas.  We find such a supplemental answer in the record and also objections by respondent to its being filed.  The record does not seem to show any ruling of the court, but appellants' reply

brief says that the court did not permit it to be filed, for the reason that the old company had ceased to purchase gas during the litigation.    Respondent seems not to have pleaded— at least, not otherwise than inferentially—that the purchasing of gas was *ultra vires.*

Respondent contends that the entire purpose of the arrangement complained of by him was to stunt the business and prospects of the Spokane company and build up the Union company.    The Spokane company's capital stock consists of fifteen hundred shares.    Respondent owns only eight of these. Practically all of the other stock belongs to these defendants. Under the arrangement made, it would seem that about the only revenue the new company would receive would be from dividends on the stock of the old company.    In all dividends declared by the latter company, respondent would share proportionately with other stockholders.    The court found that, under the arrangement made, the old company was obtaining its gas "for over twenty thousand dollars less expense per year than it could manufacture same in its own plant," and that the two companies had at all times been willing to enter into a permanent contract to continue this arrangement and would have done so had they not been enjoined in this action from so doing.    As the franchise had thirty-eight years yet to run, this would amount to a saving of over $760,000 to the company during that period.

The court also made a finding that the company paid no salary to its officers except the secretary, and there is no claim of any extravagance in the matter of management.    In the face of an economical administration of its affairs and of a saving as above mentioned, it would seem to require some clear showing of unfairness, discrimination, or disregard of legal or equitable rights before such control in the hands of the owners of fourteen hundred and eighty-six shares of the capital stock should be overturned by a court at the request of a holder of only eight shares.    Respondent's argument that this arrangement permits the Spokane company to become stunted seems

to imply that the company should repair and enlarge its plant so as to meet the growing needs of the public for gas; that the officers of the company instead of making this arrangement with the new company should have repaired and increased the capacity of the old company's plant. To have done this would have required a large sum of money. The company did not have that money. It is said that it could readily have borrowed the necessary funds. Can a minority stockholder insist upon the trustees creating an indebtedness to enlarge the business of the corporation as against the wishes of the majority, unless it be possibly in a rare case of extreme emergency where such enlargement is necessary to save its corporate life, or preserve its property from threatened and imminent destruction? The business policy of a corporation must be determined by the majority of the shareholders. Corporations could not do business on any other basis. Respondent knew that there were fifteen hundred shares of capital stock. It may be presumed that both respondent and appellants paid for every share of stock so held respectively. Respondent had the right to have the business and property of the corporation managed as by law required, and to have the same protected against illegal, wanton, or wasteful acts on the part of the majority; but, as a minority stockholder, there came no privilege to him to demand that the capital stock should be increased, or that the property of the corporation should be mortgaged or otherwise encumbered in order that the company might do more business and perhaps earn more dividends upon its stock. There might have been, and probably was, a difference of opinion as to the advisability of incurring the indebtedness necessary to enlarge the plant. The officers of the company, acting pursuant to the wishes of the majority of the stockholders, deemed it advisable to purchase its gas from the new company instead of enlarging the old company's plant. We are unable to see why this was not a discretionary matter with them. As to whether or not an increase in the capacity of the plant was an improvement,

justifying an outlay of money and the creating of a large indebtedness, was a business proposition for the determination of the board or the majority of the stockholders. That their opinion and action in relation thereto was not in accord with respondent's views as to what was expedient, or for the best interest of the company, is not sufficient justification for a court of equity to stay their hand.

In discussing the proposition that a minority of stockholders cannot question an act *intra vires* of the majority, 2 Cook on Corporations (5th ed.), § 684, says:

"The discretion of the directors or a majority of the stockholders as to acts *intra vires* cannot be questioned by single stockholders unless fraud is involved.—This proposition of law is clearly, firmly, and very properly established beyond any question. Were the rule otherwise there would be no safety or possibility of carrying on business through corporations. There would be suits instituted by dissatisfied stockholders on slight provocation, and sometimes for the very purpose of embarrassing the transaction of business. A partner in a copartnership may prevent action which he disapproves, but corporations are formed very largely to avoid that very danger and disadvantage. The corporate directors, so long as they act within their powers, may use their own discretion as to what ought to be done. . . . A court of equity cannot, however, restrain the corporation from proceeding with business and using its funds for that purpose, even though a minority of the stockholders show that sound business discretion and judgment would dictate a different policy."

In the case of *Berger v. United States Steel Corporation,* 63 N. J. Eq. 809, 53 Atl. 68, the court said:

"Lastly it is urged that the manner in which the conversion plan is to be carried through and consummated is illegal, and furnishes sufficient ground for retaining the injunction. 'Individual stockholders cannot question, in judicial proceedings, corporate acts of directors, if the same are within the powers of the corporation and in furtherance of its purposes, are not unlawful or against good morals, and are done in good faith and in the exercise of an honest judgment.' *Ellerman v.*

*Stockyards Co.*, 49 N. J. Eq. 217, 23 Atl. 287. To the same effect are the cases of *Benedict v. Construction Co.* 49 N. J. Eq. 23, 23 Atl. 485, and *Edison v. Phonograph Co.*, 52 N. J. Eq. 620, 29 Atl. 195. The action challenged in the case sub judice is that of the directors, fortified and upheld by the approving vote of more than two-thirds of the shareholders. The plan was adopted by the requisite vote with full knowledge of its purport, communicated in the circular letter accompanying the call of the stockholders' meeting, and therefore, in the absence of fraud, it is not the province of this court to substitute its judgment for that of the directors and shareholders, and declare that a less expensive or more beneficial plan could have been resorted to successfully."

In *McMullen v. Ritchie*, 64 Fed. 253, a case where a minority stockholder alleged fraud and conspiracy, the court, in speaking of the acts complained of, said:

"They all concern the management or policy of the company's assets. They do not involve acts *ultra vires* done or threatened, or acts of gross negligence in protection of corporate property, or acts involving a misappropriation of corporate assets. Mr. Ritchie's judgment was in conflict with the judgment of the board as to what was best to be done. They were questions of expediency as to measures of corporate interest. They present a case where it is sought to have the business judgment of the directory overruled, and the judgment of Mr. Ritchie enforced, through an appeal to the courts. I know of no rule of law which will justify an interference in regard to such matters by a court of justice."

See, also, *Briggs v. Spaulding*, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662; *Ellerman v. Chicago Junction R. etc. Co.*, 49 N. J. Eq. 217, 23 Atl. 287; *Burden v. Burden*, 159 N. Y. 287, 54 N. E. 17; *Leslie v. Lorillard*, 110 N. Y. 519, 18. N. E. 363, 1 L. R. A. 456; *North American Land & Timber Co. v. Watkins*, 109 Fed. 101.

It is urged that the old company is "bound hand and foot" and absolutely dominated by the new company. Every corporation is bound to and dominated by the will of the majority stockholders; but so long as this domination is not

exercised unlawfully or inequitably, courts are powerless to interfere.  To maintain an action like this for injunctive relief, it must ordinarily appear that the complaining minority stockholder is suffering some pecuniary or other substantial injury as a result of the illegal, reckless, or discriminatory conduct of the majority.  As a rule, the bare possibility of damage or wrong is not sufficient.  There must usually be a present or threatened and probable danger.  The statutes of our state permit one corporation to own shares of the capital stock of any other corporation, and to exercise the same powers over such shares as any other owner might.  Laws 1905, p. 51.  Hence, the Union company could legally own and control the majority of the shares of stock of the Spokane company and shape its policy, so long as such ownership and control was not exercised in a manner that would be unlawful or unjustifiable if by a natural person or persons.  It is not meant by this that a corporation controlling the majority of the stock of another corporation can so manipulate it as to work a fraud upon, or discriminate against, the minority shareholders thereof, either directly or indirectly, or by any kind of subterfuge.  There are certain implied obligations due to and from every shareholder.  The majority holders cannot avoid those resting upon them, nor ignore those due the minority, whether such majority be natural persons or a corporation.  In this case we do not find respondent's rights to have been ignored or unlawfully circumscribed.  We find no illegal or other action on the part of appellants justifying the intervention of a court in respondent's behalf.  Bearing upon these questions we may cite:  *Gray v. Manhattan R. Co.*, 128 N. Y. 499, 28 N. E. 498; *Barr v. Pittsburg Plate Glass Co.*, 57 Fed. 86; *Pender v. Lushington*, L. R. 6 Ch. D. 70; *Rothchild v. Memphis etc. R. Co.*, 113 Fed. 476; *Wheeler v. Pullman Iron & Steel Co.*, 143 Ill. 197, 32 N. E. 420, 17 L. R. A. 818; *Shaw v. Davis*, 78 Md. 308, 28 Atl. 619; *Price v. Holcomb*, 89 Iowa 123, 56 N. W. 407; *Rand,*

32—49 WASH.

*McNally & Co. v. Hartranft*, 29 Wash. 591, 70 Pac. 77; *Tacoma v. Bridges*, 25 Wash. 221, 65 Pac. 186.

The judgment and decree of the honorable superior court is reversed, and the case remanded with direction to dismiss the action.

HADLEY, C. J., FULLERTON, MOUNT, and CROW, JJ., concur.

RUDKIN, J. (dissenting).—The attempt on the part of the appellants to circumvent the judgment of the court in *Theis v. Spokane Falls Gas Light Co.*, 34 Wash. 23, 74 Pac. 1004, is so apparent that I feel constrained to dissent.

DUNBAR, J., concurs with Rudkin, J.