[No. 24888. Department Two. April 30, 1934.]

CHARLES DEWHITE, *Respondent*, v. HOWARD DENT et al., *Appellants*.[1]

[1]Reported in 31 P. (2d) 1018.

*Eggerman & Rosling,* for appellants.
*E. D. Phelan,* for respondent.

GERAGHTY, J.—This action was begun by the plaintiff, Charles DeWhite, against the defendants Howard Dent, A. H. Gould, W. S. Washburn, and the Sunrise Mining & Development Company, to enjoin the forfeiture of a mining lease held by the defendant company upon certain mining lands owned by the defendants Dent and Gould, and to enforce the specific performance by them of an oral agreement to convey to the mining company the leased lands for 100,000 shares of its treasury stock. A decree was entered, enjoining cancellation of the lease and granting plaintiff other equitable relief. The defendants appeal.

Our summary of the facts varies but little in essentials from the findings of the trial court. The Sunrise Mining & Development Company was organized in May, 1930, to take over and operate mining lands in Nevada county, California, held under lease, with an option to purchase, taken by Steven Kutchar and five associates from the owner, Joseph Sergi. The lease contained stipulations for the payment of a royalty upon the mineral products extracted, and the perform-

ance of a specified amount of development—fifty shifts —per month. It gave an option to purchase the land; the price being fifty thousand dollars if paid out of royalties, or thirty thousand dollars if paid in cash. All machinery and improvements placed on the premises by the lessees were to be deemed fixtures and become the property of the lessor on the termination of the lease by forfeiture or otherwise. It was stipulated time was to be of the essence of the agreement, and that, upon failure of the lessees to pay royalties or to keep any of the other covenants of the lease, the agreement, at the option of the lessor, could be immediately terminated; in which event, the lessees would surrender peaceable possession, and all money paid on account of the purchase price should be retained by the lessor as rental for the property.

Kutchar and his associates subscribed for all the capital stock of the company—1,000,000 shares, of the par value of one dollar each—paying in full for their subscription by assigning to the company all of their rights under the lease. The respondent took an active part in the organization of the company, as its promoter, and was given 50,000 shares of the capital stock for his services. Kutchar and his five associates each retained 50,000 shares, and the balance, 650,000 shares, was placed in the treasury of the company. Of this treasury stock, by a subsequent agreement the respondent was given an additional 100,000 shares, for which he was to find the necessary money to pay the organization expenses and promote the sale of treasury stock to carry on development. Respondent had practical control of the corporation, and under a contract with the owners, had the right to sell the treasury stock at prices stipulated therein. Trouble developed between him and the incorporators—the original owners of the lease—and some litigation ensued.

At this time, respondent interested appellants Dent and Washburn in the company, and they purchased all the stock held by Kutchar and his associates. It was thought that, with the elimination of these discordant elements, the company would be able to carry on without further difficulty; but more money was needed to continue development and comply with the conditions of the lease. Dent then induced Gould to take an interest in the company, and they paid twenty-five thousand dollars into the company's treasury, taking in payment 100,000 shares of stock. This stock, however, was not taken from the original treasury stock, but was contributed ratably by the stockholders, including Dent and Washburn. It was understood, when Dent and Gould advanced this money, that they might individually, and to protect their investments, make an outright purchase of the land, subject to the lease, from the owner, Sergi. This they later did, paying him ten thousand dollars in cash and 5,000 shares of their individual stock. The purchase was known to the other stockholders, and a notice of it entered on the company records.

Upon the advancement of the twenty-five thousand dollars by appellants, they were put in control of the company, in accordance with their agreement with respondent. Dent, Gould and Washburn became trustees, and Dent was elected president, Gould vice-president, and Washburn secretary and treasurer. ·

After the money advanced by appellants had been spent for machinery and development, the company found itself again in financial difficulties, and appellants sought to have the minority stockholders (respondent being the largest) join in some plan for raising funds to carry on the work. . Appellants were not willing to advance any more money without a ratable contribution from the minority stockholders. The com-

pany became in technical default on the lease, and appellants Dent and Gould, as owners of the land, on April 15, 1932, served written notice upon it of their purpose to forfeit the lease and option within thirty days after the date of notice, unless the conditions of the lease were complied with. On the same date, Dent and Gould sent the stockholders of the company the following notice:

"Sunrise Mining & Development Company,
"Seattle, Washington.
"Gentlemen:

"In July 1931, upon your assurances and those of Mr. Charles DeWhite, who for some time prior thereto held contract to purchase for resale for corporate purposes certain treasury stock, that a sufficient additional amount of such stock would forthwith be sold to provide funds to meet all development requirements, H. A. Dent purchased 300,000 shares of the stock of this company.

"These assurances not having been realized, in order to further assist in obtaining the required corporate financing, H. A. Dent surrendered 44,868 shares for resale and in addition we, the undersigned, have subsequently purchased an additional 100,000 shares of stock in order that the proceeds might be available to the corporation for the purchase and installation of necessary machinery.

"In order to protect this further investment in the corporate stock it was necessary for us, as you were aware, to acquire the title to the property covered by the Sergi agreement of March 25, 1930 under which this corporation is the lessee.

"In spite of the fact that we have paid large sums into the corporate treasury as aforesaid, the company is under-financed, is without funds for the mining development and is now and for some time past has been in default under its lease and we have simultaneously herewith given notice of forfeiture and termination according to the terms of said lease.

"This condition has been solely caused by the fact that the remaining stockholders, exclusive of ourselves,

have not borne their pro rata share and burden of the necessary corporate financing.

"The purchase of the property by us was entered into solely as a measure of protection against the jeopardy and risk of entire loss of our additional investment whereby the machinery was purchased and not for the purpose of profiting at the company's expense. This purchase was at considerably less cost than the option terms contained in the lease. We will at any time within 30 days from date deed the property to the company upon payment of our actual cost, interest and our actual expenses heretofore incurred in the company's behalf on three conditions:

"(1) That such purchase price be raised in the company's behalf by the stockholders thereof without the sale of any further treasury stock.

"(2) That the remaining stockholders other than the undersigned by voluntary assessment and/or surrender of stock for resale make such proportionate contribution as will equalize the contributions of the undersigned to enable the company to obtain the necessary financing to insure the proper development of the mine.

"(3) That the present term of the escrow agreement under which certain stock is now deposited be extended for the period of one year.

"We have paid in $25,000 for the purchase of machinery and were assured that an equal amount would be raised for the corporation by other stockholders. We are convinced that with this amount in the corporate treasury the company's success would be assured.

"We feel that a special meeting of the stockholders should be immediately called to consider the notice of termination above referred to and this alternative offer.

"Yours very truly,<br>
"H. A. Dent<br>
"A. H. Gould."

After the receipt of this notice, a special meeting of the stockholders was held on April 30, 1932, for the purpose of considering the financial condition of the

company. The respondent took the position at this meeting that the appellants had agreed to finance the company and to accept 100,000 shares of the treasury stock for the property. Nothing seems to have been accomplished by this meeting.

This action was instituted May 14, 1932, by respondent, to enjoin the forfeiture of the lease by Dent and Gould, as threatened in the notices to the company and its stockholders. In his complaint, respondent alleged that, at the time appellants advanced twenty-five thousand dollars to the treasury of the company, it was orally agreed they would finance the further development of the mine, and that, if appellants purchased the mining land, they would take in satisfaction for whatever sum was paid by them 100,000 shares of treasury stock, and convey the land to the company. This was the principal ground upon which respondent sought to enjoin the forfeiture of the lease by appellants Dent and Gould.

The specific relief prayed for in respondent's complaint was that appellants be enjoined from forfeiting the lease; that they be required to hold the property in trust for the corporation and the stockholders thereof; that they be ordered and required, as majority stockholders of the corporation, to permit it to carry out and complete the transfer to the appellant Dent, or to his order, of 100,000 shares of the treasury stock in repayment of the sum advanced for purchasing the land; that Dent and Gould be required to specifically perform their part of the oral agreement, by conveying to the corporation the legal title to the land; and that they be enjoined from alienating or encumbering the land in any manner other than as ordered by the court.

The court found that neither appellants Dent nor Gould, the holders of title to the mining land, had ever agreed to personally finance the mine development, as

charged in the complaint, or to convey the property for treasury stock, and that these allegations of the respondent in his complaint were wholly without basis or foundation. In the course of an exhaustive oral opinion, the trial judge said that the evidence developed no bad faith on the part of the appellants in the purchase of the property; that anyone could have bought it, and, had the appellants not done so, someone else would, or the lease would have been forfeited. He also found that the evidence disclosed no act of the appellants which developed any constructive trust. In relation to appellants' management of the company's affairs, he said:

"At the time of their notice of April, 1932, all of the monies of the company had been expended. They had been expended honestly and legitimately, and according to the preconceived plans as to how that particular fund should be expended. It may not have been the wisest plan, but it was the plan of the company upon which they entered, and they carried it through to practically the last dollar."

While thus finding that the appellants, as majority stockholders and officers of the company, had conducted its affairs honestly and in the exercise of their best judgment, and in the purchase of the land had done so with knowledge of the other stockholders, and without the concealment of any material facts, the court nevertheless entered a decree unusual, to say the least, in some of its provisions. The decree adjudged Dent and Gould to be holding legal title to the land for the corporation. It then orders the removal of Dent, Gould and Washburn from their respective offices as president, vice-president, secretary and treasurer of the corporation, and removes them from their offices as trustees. It provides that a special meeting of the stockholders of the corporation be held within

forty days after the entry of the decree, for the purpose of electing a new board of trustees for the corporation, and to fill vacancies on the board. It then provides:

" . . . that the contractual rights existing between the defendants as stockholders and the other stockholders of the said defendant corporation be, and the same are hereby temporarily set aside and suspended and that the defendants Howard Dent, A. H. Gould and W. S. Washburn are and each of them is, hereby deprived of the right to vote or to have their stock voted at said special meeting of stockholders and the voting power of the stock owned and held by said defendants and each of them, is hereby temporarily suspended, such suspension and deprivation of the voting rights of said defendants as stockholders and of the stock so held by them shall be and continue for a period not to exceed one hundred forty (140) days from the entry of this decree, at the end of which time, unless sooner lifted by the contingencies hereinafter contained, all disability and suspension of such rights shall be terminated."

After this disfranchisement of the majority stockholders, the decree then provides that the minority stockholders shall be authorized and empowered to elect a board of directors, and to transact such other business as they deem necessary or convenient to carry out the terms and purposes of the decree; that a majority of the stock of the corporation so voting shall constitute and be a majority of the stock for the purposes of the meeting.

It then provides that the minority stockholders, thus having control and direction of the affairs of the company, be authorized and empowered to pay appellants Dent and Gould the ten thousand dollars paid by them for the land, in addition to sums incurred for expenses and taxes, and interest at the rate of six per cent per annum, together with an allowance for the 5,000 shares

of stock given to Sergi as part of the consideration. To raise this money, the stockholders are authorized to borrow, but only on the credit of the corporation, and to sell the treasury stock and the mining ground, if necessary; but, in the event of a proposed sale of the mining ground at a price deemed sufficient and satisfactory to the officers of the corporation, before the sale is consummated an option shall be given to the appellants Dent and Gould to purchase the ground at the same price, in the event they comply with the terms and pay the consideration at such advanced price.

The decree requires Dent and Gould, if tendered the price of the land within the one hundred forty day period, to convey to the corporation. The forfeiture of the lease is suspended for that period, and if at the close of the period the company under its reorganized management shall not have tendered payment of the purchase price, the forfeiture shall become effective and the title of Dent and Gould absolute. The decree provides that, at the end of the one hundred forty day period, the officers elected by the minority stockholders shall vacate their offices, and the majority officers may then resume control of the affairs of the company. During the period of suspension, Dent and Gould are restrained from disposing of the property to any person other than the corporation.

We are aware of no principle of law upon which this decree can be sustained in its entirety. It removes both the officers and majority stockholders from control of the company to which they have been the principal contributors of funds, and turns their property over for a period of one hundred forty days to the tender mercies of the minority stockholders, the principal one of whom is the respondent, who received his stock largely for promotion, and with very little financial contribution to the enterprise.

There may be occasions upon which courts will interfere by injunctive relief against majority stockholders, when it is shown they are acting in fraud of the rights of the minority, but in such cases the courts will not go beyond negative relief in restraining the wrongful acts of the majority. And so, too, the courts will grant injunctive relief where the trustees of a corporation do or threaten some act in breach of their trust. But the court has no power to deny stockholders the exercise of their franchise in the corporation, nor can it by its fiat decree a minority to be a majority.

"A most valuable privilege, which attaches to the ownership of stock in a corporation, is the right to vote upon it at any meeting of stockholders. As to that resolution, considered by itself, as stockholders, they owed no greater duty to their co-stockholders than those stockholders owed to them.

"Like other stockholders, they had a right to be influenced by what they conceived to be for their own interest, and they cannot lawfully be denied that right, nor can it be limited or circumscribed by the fact that they occupied the position of directors in the company." *United States Steel Corporation v. Hodge,* 64 N. J. Eq. 807, 54 Atl. 1, 60 L. R. A. 742.

"Every corporation is bound to and dominated by the will of the majority stockholders; but so long as this domination is not exercised unlawfully or inequitably, courts are powerless to interfere. To maintain an action like this for injunctive relief, it must ordinarily appear that the complaining minority stockholder is suffering some pecuniary or other substantial injury as a result of the illegal, reckless, or discriminatory conduct of the majority." *Theis v. Spokane Falls Gas Light Co.,* 49 Wash. 477, 95 Pac. 1074.

"It must be remembered that Schwartz' interest in the corporation is several times greater than the interest of the appellant, and that Schwartz was and is, by great odds, the largest stockholder. Such being the case, he would have a right to dictate the business policy of the company so long as he did so in a reason-

ably competent and efficient manner. The law has always recognized the right of a majority stockholder of a corporation to control its business and affairs, and a court of equity will never interfere with such control except for the very best of reasons." *Kahan v. Alaska Junk Co.,* 111 Wash. 39, 189 Pac. 262, 10 A. L. R. 151.

Clearly, all that portion of the decree which disfranchised the majority stockholders and remitted control of the company to the minority was beyond the power of the court.

So, too, was the removal of the officers and directors of the corporation. Their purchase of the property to protect their investments, and incidentally the interests of all of the stockholders, was, as the court found, done fairly, with no concealment, but with full knowledge of the stockholders.

We can understand, and in some measure sympathize with, the desire of the trial court to give the minority stockholders a final chance to save the property from forfeiture. But the extent of the court's power in this respect was to restrain the forfeiture by Dent and Gould for a reasonable period, in order to give the minority an opportunity to raise their share of the necessary money.

At the meeting of stockholders held in April, 1932, following the notice of forfeiture, called for the purpose of devising means for raising money, the minority stockholders, under the leadership of respondent, took the position that Dent and Gould were under obligation by their oral contract to convey to the company for 100,000 shares of its treasury stock. Their suit, as we have seen, to enjoin the forfeiture was based upon this theory. We may now give the minority shareholders the benefit of the doubt, and assume that, finding this avenue of relief closed to them, they will, if given another opportunity, make an effort to join the majority

stockholders in raising the necessary funds. As was said by Judge Chadwick, in *Rohlinger v. Coletta Land & Orchard Co.*, 64 Wash. 348, 116 Pac. 1095, courts cannot relieve from a default under the terms of a contract, except to grant a period of grace, where the equities of the case warrant it.

We so far agree with the views of the trial court that we think the respondent and other minority stockholders should be given some period of grace in which to raise their proportionate share of the money required to redeem the mining ground. It is therefore ordered that the judgment of the trial court be reversed, the case remanded, and a judgment entered restraining the appellants Dent and Gould from forfeiting the lease for the period of four months from the date of the receipt of the remittitur in the office of the clerk of the superior court; and that, if within this four months period the minority stockholders raise and pay into the registry of the court, for the use of Dent and Gould, a sum equal to their proportionate share of the money required to redeem the property, as found by the trial court, the appellants shall be required to make conveyance to the corporation. If the minority stockholders shall not, within the four months period, comply with this condition, then the rights of the company under the lease shall terminate. The decree shall also restrain appellants Dent and Gould from transferring or in any other way encumbering the property during the four months period.

We do not overlook the fact that the company has a large amount of stock yet unsold in its treasury. The sale of this stock might seem to be the first resource for meeting the company's financial needs, but as the sale of the treasury stock involves the exercise of corporate discretion, and as the value of the stock and the possibility of its sale are unknown, we are not disposed to

make any direction with respect to it. However, the option given the minority stockholders to contribute toward a redemption of the property shall not be construed as a limitation upon the power of the corporate authorities of the company to find the necessary money by the sale of treasury stock, if they determine to do so.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ., concur.

