212

JOSEPH C. KNOWLES *et al., Respondents,* v. ROBERT ANDERSON *et al., Appellants.*[1]

*Yvonne Jackson* and *McMullen & Snider,* for appellants.

*Estes & Knapp,* for respondents.

ROBINSON, J.—It was alleged in the complaint in this cause, that, on June 14, 1948, the plaintiffs (respondents in this court) entered into a written contract, denominated "Real Estate contract including Personal Property," in which the plaintiffs agreed to sell, and the defendants to buy, certain real and personal property described therein. The property consisted of a farm in Clark county. The full purchase price was fourteen thousand five hundred dollars. The purchasers (appellants herein) made a down payment of two thousand dollars, and it was provided, in the contract, that the balance should be paid in monthly installments of one hundred dollars each, commencing July 10, 1948. In addition, the contract provides as follows:

"It is further mutually agreed and understood that the buyers are the owners of certain real property located at

[1] Reported in 222 P. (2d) 657.

5527 S. E. Flavel Drive, Portland, Oregon, which all parties contemplate will be sold in the near future and the proceeds of said property applied on the indebtedness herein. It is anticipated that buyers will receive between $5,000.00 and $6,000.00 net for their equity in the above property, which property buyers will in good faith attempt to sell as soon as possible and upon receipt of proceeds the said proceeds will be henceforth immediately applied to reduction of the debt contracted herein. *Buyers agree that said Portland, Oregon real property will be sold in any event prior to January 1, 1949 and the net proceeds applied to this contract.* In addition to the above it is mutually agreed that the buyers may at their option in addition to the monthly payments pay the whole or any part of the remaining balance due at any time without penalty." (Italics ours.)

Further on in the contract is a twenty-four-line paragraph entitled "BUYERS COVENANTS." That paragraph contains no agreement of the buyers similar to that italicized above, to the effect that they would sell the Portland house and apply the proceeds of the sale on the contract with the sellers.

Finally, the contract contained a time-is-of-the-essence clause, reading as follows:

"TIME ESSENCE: Time is of the essence of this contract and if the buyers shall fail, refuse or neglect to pay either or any of the installments or interest or any other payment due, or shall fail to keep and/or perform any of the covenants and agreements herein contained on the part of the buyers to be performed then the sellers shall have the right to declare this contract null and void; *and if the buyers shall fail to make good such default within 30 days after the sellers shall have served a written Notice of Declaration of Forfeiture* by delivering said notice to the buyers or mailing same by registered mail to said buyers at their last known address or to the address given on this contract, at the seller's option, *then and in that event all of the rights of the buyers in and to the property described herein and all rights under this contract shall immediately and utterly cease and determine* and the property described herein shall revert to and revest in the sellers without further action on the part of the sellers and without any right of the buyers to reclamation or compensation for money paid or for improvements made on said premises, as fully, perfectly and absolutely as

if this agreement had never been made and all money theretofore paid to the sellers under this contract shall thereupon be forfeited without process of law and shall be retained by and belong to the sellers in full satisfaction of all claims as accrued and reasonable rent of said premises from this date to the time of such forfeiture and as the liquidated damages to the sellers for the buyer's failure to complete this contract." (Italics ours.)

The purchasers took possession of the farm and began making the installment payments which were continued until the time of the trial; there is no claim of delinquency in this regard. However, they did not succeed in selling the Portland house prior to January 1, 1949. On January 11th, the sellers, relying on the "TIME ESSENCE" clause quoted above, claimed a forfeiture, and, using the stationery of their attorney, sent, by registered mail, a letter to the purchasers which read, in part, as follows:

"January 11, 1949

"Mr. & Mrs. Robert Anderson
"Camas, Washington
"Dear Mr. & Mrs. Anderson:

"You are here and now notified that because you have failed to comply with the terms of our contract of June 14, 1948, wherein we, as sellers, did sell to you on contract certain real estate . . . we have elected and do hereby elect to declare your contract forfeited.

"Pursuant to the contract you were to sell your Portland house and pay us the net proceeds therefrom on or before January 1, 1949, which you have not done. This has caused us untold trouble and inconvenience in that we had planned to receive this money and pay it on other contracts which we are now about to lose because we do not have this money to protect ourselves.

"Please accept this Notice as a thirty (30) day Notice under our contract (Time Essence Clause) of Declaration of Forfeiture. We consider your rights totally and immediately ceased and expect you to turn the property over to us on or before thirty (30) days from the receipt of this Declaration.

"Very truly yours,
Joseph C. Knowles
Mary P. Knowles"

The trial court granted the sellers' claim of forfeiture, and decreed:

"1. That the contract and the defendants' rights therein and in the property thereby contracted to be sold be and the same are hereby declared forfeited and determined.

"2. That plaintiffs are entitled to the immediate possession of the property contracted to be sold and all writs and orders necessary to restore plaintiffs to possession of said property shall be issued."

Appellants contend that the court erred, first, in declaring a forfeiture, and second (in the event that such a forfeiture was properly ordered), in denying to them a "period of grace" in which to comply with the provision of the contract allegedly breached. In the latter connection, they cite *De White v. Dent*, 177 Wash. 418, 31 P. (2d) 1018; *Central Life Assurance Society v. Impelmans*, 13 Wn. (2d) 632, 126 P. (2d) 757; *Dill v. Zielke*, 26 Wn. (2d) 246, 173 P. (2d) 977; and our very recent opinion (*Moeller v. Good Hope Farms*, 35 Wn. (2d) 777, 215 P. (2d) 425), which cases set forth the rule that, although, where time is of the essence of the contract of sale, the vendor may claim a forfeiture for nonpayment of all or part of the purchase price, where substantial justice requires it, the courts may extend the time within which the vendee will be permitted to make up the defaulted payments. With this phase of the case we need not concern ourselves, however, as we are of the view that, in the present instance, the situation did not warrant a decree of forfeiture.

It is well established that forfeitures are not favored in the law, and never enforced in equity unless the right thereto is so clear as to permit of no denial. *Dill v. Zielke, supra*; *Moeller v. Good Hope Farms, supra*. From the wording of their letter, it is clear that the sellers claimed their forfeitures on the ground that the buyers did not sell the Portland property prior to January 1, 1949. In so doing, they treated the following sentence as a binding covenant of purchase:

"Buyers agree that said Portland, Oregon real property will be sold in any event prior to January 1, 1949 and the net proceeds applied to this contract."

There is at least some doubt whether this sentence was properly considered as a covenant of the appellants. If it was intended by the parties to be such, it seems remarkable that it is not found in that paragraph in the contract headed "BUYERS COVENANTS," the text of which begins as follows:

"Buyers agree to make the payments above mentioned promptly in the manner and on the dates named; . . ."

But the Portland property is not even mentioned in the long list of covenants then set forth. Furthermore, we think that, in construing the sentence relied upon by the sellers as a buyer's covenant, some attention should be given to the context in which it is found. At the risk of being unduly repetitious, we will quote the section of the contract in which the claimed covenant is found:

"It is further mutually agreed and understood that the buyers are the owners of certain real property located at 5527 S. E. Flavel Drive, Portland, Oregon, which all parties contemplate will be sold in the near future and the proceeds of said property applied on the indebtedness herein. It is anticipated that buyers will receive between $5,000.00 and $6,000.00 net for their equity in the above property, which property buyers will in good faith attempt to sell as soon as possible and upon receipt of proceeds the said proceeds will be henceforth immediately applied to reduction of the debt contracted herein. Buyers agree that said Portland, Oregon real property will be sold in any event prior to January 1, 1949, and the net proceeds applied to this contract. . . ."

When this paragraph is considered as a whole, it would appear that the essential idea it expresses is that the buyers should, in good faith, endeavor to sell their property as soon as possible and turn the proceeds over to respondents. There is convincing evidence in the record that they endeavored to do this, but without success. They at once listed the property with a real-estate dealer in Portland, to be sold for ten thousand five hundred dollars, but with instructions not to turn down any offer without first consulting them. At all times since, the property has been listed with established agents; and, though appellant Anderson testified that he had received an offer of eight thousand five hundred dollars for it, it was not shown that this offer was made after the con-

tract here involved was executed. There do not appear to have been any other offers. Thus, it would seem that appellants did everything in their power to comply with the letter of their contract, but were honestly unable to do so.

However, even if the provision that the buyers should sell the property prior to January 1, 1949, be regarded as a binding covenant, breach of which would subject the appellant to a forfeiture — and it cannot be denied that the unequivocal character of the language employed lends support to this view — there is another reason for refusing to decree such a forfeiture in the present case. The "TIME ESSENCE" clause of the contract provided that:

"If the buyers shall fail to make good such default within 30 days after the sellers shall have served a written Notice of Declaration of Forfeiture . . . then and in that event all of the rights of the buyers . . . shall immediately and utterly cease and determine."

The trial court, in its oral decision, stated:

"Now, from Defendant's Exhibit 2 it appears that in compliance with that provision of the contract I just read that the buyers, the defendants herein, were given notice, some ten or eleven days after the alleged default. At that time they were notified that they had thirty days from and after the receipt of this notice dated January 11, 1949, to place themselves in good standing and otherwise comply with this contract."

But the actual wording of the sellers' letter was as follows:

"Please accept this Notice as a thirty (30) day Notice under our contract (Time Essence Clause) of Declaration of Forfeiture. *We consider your rights totally and immediately ceased and expect you to turn the property over to us on or before thirty (30) days from the receipt of this Declaration.*" (Italics ours.)

It is quite apparent that this notice gave the buyers no time whatever to make up their default, in spite of the provision in the "TIME ESSENCE" clause that they should be allowed thirty days from the time of the giving of notice for this purpose. As sent, the notice contemplated the forfeiture of the contract on the day it was mailed, and pur-

ported to leave nothing remaining to the appellants other than the right of possession during the thirty-day period. In this state of the matter, we are inclined to agree with the following statement in the appellants' brief:

"Such notice was not within the contemplation of the parties nor was it within the provisions of the contract. It, therefore, must be regarded that said notice was not a sufficient compliance with the provisions of the contract to authorize the forfeiture thereof."

There is evidence in the record which induces us to believe it possible that the parties can arrive at an amicable settlement of this controversy. In any event, in view of the defective notice given the buyers by the sellers, we must hold that the forfeiture was improperly declared.

The decree appealed from will accordingly be reversed and set aside, and the cause dismissed. It is so ordered.

Simpson, C. J., Mallery, Hill, and Hamley, JJ., concur.