[No. 9054.   Department Two.   December 9, 1910.]

J. B. BELTINCK, *Appellant*, v. TACOMA THEATER COMPANY et al., *Respondents.*[1]

CONTRACTS—RESCISSION—DEFAULTS IN PAYMENT—TIME OF ESSENCE. Where a contract, in which plaintiff agreed to pay $175 dollars per month for the display of an advertising drop curtain in a theater, does not make time of the essence, time becomes of the essence of the contract on defendant's demand for payment and threats to remove the curtain; and where plaintiff remains in default, the defendant may rescind the contract and declare a forfeiture.

SAME—WAIVER OF RESCISSION—ACCEPTANCE OF PAYMENTS. Acceptance after maturity of payments of monthly rent for the display of an advertising drop curtain in a theater, the rent being due in advance, does not waive the right to rescind the contract for defaults in payment, where the payments made were received after protest and frequent demands and repeated threats to remove the curtain.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered March 8, 1910, dismissing, at the close of plaintiff's case, an action on contract. Affirmed.

*Fitch & Jacobs*, for appellant.

*Ellis, Fletcher & Evans*, for respondents.

CROW, J.—This action was commenced by J. B. Beltinck against Tacoma Theater Company and Tacoma Theater Trust Company, to recover damages for the breach of a written contract. At the close of plaintiff's evidence, the

[1]Reported in 111 Pac. 1045.

trial judge granted a nonsuit and dismissed the action.   The plaintiff has appealed.

On March 15, 1906, the Tacoma Theater Company, party of the first part, and Beltinck-James Company, appellant's assignor, party of the second part, entered into a contract, material portions of which read as follows:

"That said party of the first part, for the consideration hereinafter expressed, hereby grants unto the party of the second part, or their assigns, the exclusive right to place an advertising drop curtain in the Tacoma Theater, city of Tacoma, state of Washington, and the party of the.first part agrees to hang and furnish all tackle and appliances therefor; said curtain to cover the entire proscenium opening of the said theater; and said first party will not allow any other scenic or curtain advertising in said theater, while this contract is in force; and it will use the said advertising drop curtain during all performances, and agrees that said advertising curtain shall be shown covering the entire proscenium opening, between each and every intermission, for the entire length of the intermission, between each and every act, and that during entire time said advertising drop curtain is displayed, the advertisements on said curtain will be plainly visible from all parts of the theater, and furnish to said party on request a list of 'Dark Nights,' and opening and closing dates of each season. . . . The party of the first part agrees to make a pro rata reduction from monthly payments of one hundred and seventy-five dollars, as hereinafter mentioned, whenever said theater is closed, or less than twenty performances occur monthly.

"In consideration of the grants and privileges herein set forth on the part of the party of the first part, the party of the second part agrees to pay to the party of the first part, one hundred and seventy-five dollars per month, payable monthly in advance.   It is hereby mutually agreed by the parties hereto, that this contract is made for a term of three years from the date of installation of said advertising drop curtain by the party of the second part, and that said regular monthly payments shall begin from that date."

The curtain was installed and remained on exhibition until January 1, 1907.   Appellant made partial payments, but

failed to make them when due.   Entertainments were booked in advance, and respondents repeatedly demanded advance payments of rent.   On December 28, 1906, appellant being in arrears, respondents served on him the following notice:

"You are hereby notified that because of your failure to keep and perform the terms, covenants and conditions on your part to be kept and performed as contained and set forth in that certain agreement dated the 15th day of March, 1906, between yourselves as party of the second part and the undersigned as party of the first part, the said undersigned does declare said agreement terminated and at an end.   You are requested to forthwith remove your advertising drop curtain from the premises of the undersigned, to wit, The Tacoma Theater, in the city of Tacoma, Washington, and forthwith pay to the undersigned all amounts now due from you to the undersigned to this date.   You are further notified that unless you at once signify your intention to remove said curtain and do forthwith remove the same, that the undersigned will remove the same and hold the same subject to your order."

On December 31, 1906, appellant served on respondents the following writing:

"This is to notify you that we have a contract with your company for a period of three years for maintaining the advertising curtain at the Tacoma Theater, which said contract has not yet expired.   We are now, and have at all times been ready and willing to comply with all the conditions of said contract, and if you remove, or in any way interfere with the said curtain in violation of the terms and conditions of the said contract, we will hold you responsible in damages for the same."

Appellant at the same time, but after the rescission had been declared, tendered all rent then due.   Respondents refused to accept the same, and forthwith removed the curtain.   The trial judge held that appellant had no right to demand a display of the curtain after the commencement of any month unless he had tendered or paid the rent in advance; that the stipulation to pay in advance was a vital one, although the contract did not specifically state that time was of its essence; that as all performances were booked in ad-

vance, there could have been no difficulty is ascertaining open nights, or how much advance rental would become due in any month, and that the respondents were entitled to rescind the contract for appellant's breach.

Appellant contends that, although the contract provided for advance payments, time was not of its essence, and that the respondents were not entitled to rescind without demanding the rent and informing him of their intention. Under his contract, appellant was certainly entitled to insist on a display of the curtain as long as he kept his rentals paid in advance. Could he, however, insist upon its display when in default? The evidence shows that respondents, through Mr. Herald, their manager, had repeatedly demanded payment; had frequently protested appellant's failure to pay, and had threatened to remove the curtain. Appellant, when interrogated as to whether the manager had so threatened to remove the curtain if the rent was not paid, stated that he did not remember. Mr. Herald's statements are undisputed. As a witness for respondents he testified to his frequent demands for payment and his frequent threats to rescind. There is no dispute upon this point. Although appellant contends that time was not of the essence of the contract, time became of its essence, by respondents' demand for payment and threats to remove the curtain.

Appellant seems to rely upon an alleged course of dealing whereby respondents constantly allowed him to make payments after they had become due, and continued the curtain. He insists that the respondents themselves did not consider time of the essence of the contract; that they disregarded its provisions and permitted him to make defaulted payments. He now invokes the rule that, where parties to a contract give it a particular construction, such construction will be adopted by the courts when enforcing its provisions. In *Douglas v. Hanbury*, 56 Wash. 63, 104 Pac. 1110, time by express terms was made the essence of a contract for the sale of real estate, the purchase price to be paid in installments. Many payments

were made and accepted after their maturity. Thereafter the vendors refused a tender of two installments, one of which was past due, and later commenced an action to quiet their title. Passing upon their contentions, this court, citing numerous authorities, said:

"The rule is firmly established in this state that, where time is made of the essence of a contract of sale, the vendor may declare a forfeiture of the contract for nonpayment of the purchase price or any installment thereof. . . . But the rule is equally well established that the right of forfeiture must be clearly and unequivocally proved, and that the right may be waived by extending the time for payment, or by indulgences granted to the purchaser. . . . Of the nineteen monthly installments paid by the appellants, two were paid and accepted before maturity, and the remaining seventeen were paid and accepted from a few days to a few months after maturity. Such a course of conduct constituted a clear waiver of the provision making time of the essence of the contract, and the vendors could not thereafter declare a forfeiture, 'until after demand for payment and the lapse of a reasonable time,' as held by this court in *Whiting v. Doughton, supra* [31 Wash. 327, 71 Pac. 1026], or by giving definite and specific notice of their intention to claim a forfeiture, as held in *Watson v. White, supra* [152 Ill. 364, 38 N. E. 902.] Common honesty and fair dealing required this much at their hands. The repeated indulgences granted to the purchaser clearly distinguish this case from *Garvey v. Barkley*, 56 Wash. 24, 104 Pac. 1108."

Appellant had failed to pay in accordance with the terms of his contract, although frequent demands were made upon him. Respondents were not compelled to refuse defaulted payments in order that they might preserve their right to rescind the contract for appellant's breach. They accepted such payments, for which appellant received credit, but they protested against appellant's course of dealing and repeatedly threatened to remove the curtain. Appellant thereafter remained in default; whereupon they rescinded. This is not an instance where a rescission was declared without previous demand or warning. If respondents, after repeated demands

and warnings, could not rescind, they would have been compelled to continue the curtain indefinitely, although appellant constantly remained in default.   The contract imposed no such obligation.

The judgment is affirmed.

RUDKIN, C. J., DUNBAR, MORRIS, and CHADWICK, JJ., concur.