[No. 9541.    Department Two.    July 29, 1911.]

## MICHAEL ROHLINGER et al., Respondents, v. COLETTA LAND & ORCHARD COMPANY, Appellant.[1]

REFORMATION OF INSTRUMENTS—MISTAKE—EVIDENCE. A contract for the sale of land should be reformed where it was intended that, upon partial payments, parts of the lands might be released at agreed valuations of $85 per acre for valley land, $75 per acre for certain overflowed valley land, and $20 for the balance which was hill land, and a mistake was made in designating the valley land, part of which was omitted from the description of that class.

APPEAL — REVIEW — CORRECT DECISION ON ERRONEOUS GROUND — RIGHT TO ALLEGE ERROR—NECESSITY OF APPEAL. In an equity case, where no findings are made, a decision will be affirmed if correct under the evidence and the whole record upon any ground, although based upon an erroneous proposition of law; and the successful party need not appeal therefrom to secure a correction of the error on affirming the judgment.

VENDOR AND PURCHASER—CONTRACTS—FORFEITURES—RELIEF. The courts cannot relieve from the hardship of defaults provided for in contracts to purchase land, except to grant a period of grace, where warranted by the equities.

Appeal from a judgment of the superior court for Grant county, Steiner, J., entered March 4, 1911, in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to reform a contract.    Affirmed.

*Brightman & Tennant,* for appellant.
*McCarthy & Edge,* for respondents.

CHADWICK, J.—Appellant is a corporation, organized to take over and promote the sale of certain property in Grant

[1]Reported in 116 Pac. 1095.

county which had been contracted for by defendants Baitinger and Ulrich. The property consisted of ten sections of land, and the purchase price for the whole was calculated at $25 an acre, or $160,000. Five thousand dollars was paid upon the execution of the contract, May 28, 1909. The balance was to be paid, $30,000 on June 3, 1909, $25,000 on December 3, 1909, and $25,000 on June 3 and December 3 thereafter, until the full purchase price was paid. Deferred payments drew interest at the rate of six per cent per annum. The payment due June 3, 1909, was paid, but appellant was unable to meet the payment for December 3, 1909, and the time was extended until April 3, 1910. Three thousand seven hundred and fifty dollars was paid in December, but this probably covered interest. It was agreed that any part of the lands might be released after the payment of $30,000, at certain agreed values—$85 for certain enumerated tracts, $75 for a tract of valley land which was subject to overflow, and $20 for other tracts.

About April 3, 1910, defendants Baitinger and Ulrich went to Milwaukee, and entered into certain negotiations with those interested in the land with respondents (it being admitted that respondent Michael Rohlinger is a trustee), looking to an adjustment of the affair and an extension of time. It is agreed that defendants and appellant were unable to meet the extended payment then due. Although an extension agreement was drawn, it was not executed, and appellant defaulted the payment. However, it tendered, through defendant Baitinger, $1,200, and demanded a release of all that part of section 33, township 16, north, range 26 E., W. M., lying north of the Chicago, Milwaukee & St. Paul Railway Company's right of way, and demanded a deed therefor. There had been some slight controversy between the parties over the release price of this tract of land, respondent and his associates insisting that a mistake had occurred, and defendants insisting upon the performance of the contract according to its letter. The tender was re-

fused. Thereafter respondents brought this action, setting up the contract and the mistake, and praying that the contract be reformed; that, should the court deem it inequitable for the respondents to declare a forfeiture prior to the reformation, a time be fixed within which defendants might perform, and failing in this, that the contract and all rights thereunder be forfeited. Defendants met this complaint, denying that any mistake had been made, and further alleged a tender, and demanded a specific performance as to the land in section 33.

No more than a general review of the testimony is necessary under our view of the case. It appears that the lands are different in character and, because of that fact, were referred to in the negotiations leading up to the execution of the contract as valley land and upland. The purpose of the parties undoubtedly was to provide for the release of all the valley land at $85, excepting only the half section subject to overflow, which was to be released at $75 per acre. In the contract certain sections were described to be released at these figures and "the sum of $20 for the balance of the land herein described." The land in controversy was not specifically described in the contract, and hence fell within the clause just quoted. The attorney who drew the contract says that it was the understanding that the valley land was to be released only on payment of $85 per acre. The fact that the valley land was of much greater value than the hill land, this piece in particular, aside from being valley land, having some speculative value over the other tracts of like character because it was situate adjacent to the prospective townsite of Coletta on the Chicago, Milwaukee & Puget Sound railway, indicates to our minds that respondents are correct in their contention. Every reason for stipulating the higher release value is in their favor. No fact or circumstance or conversation indicating a contrary understanding, at or before the time the contract was executed, is

testified to, defendants and appellant relying upon the letter of the writing.

Three theories are advanced to sustain the decree of the court: anticipatory breach, mistake, and want of equity in appellant's demand. The greater part of the briefs is taken up with a discussion of the law relating to the rights of parties where an anticipatory breach of a contract occurs; appellant insisting that it was upon this doctrine that the court based its decree. That part of the decree pertinent to our discussion is:

"It is further ordered, adjudged and decreed that the plaintiffs are not entitled to a reformation of the contract as prayed for in plaintiffs' complaint, and that plaintiffs are entitled to a forfeiture of said contract unless the defendant Coletta Land & Orchard Company within thirty days from the date of this decree shall pay to the plaintiffs all the several sums of money and all sums due to this date in accordance with the terms of this contract. And it is further ordered, adjudged and decreed that the defendant Coletta Land & Orchard Company is not entitled to the relief prayed for in its cross-complaint."

It is earnestly contended that by this decree the court found that there was no mistake, and hence no right of reformation; that respondent, not having appealed therefrom, is bound thereby, and the only question open for this court is whether there was an anticipatory breach, and it is probably shown that there was not. There are no findings of fact, and whether the trial judge found that there was indeed no mistake, or that, although not fully convinced upon that point, the appellant had not made out such a case on its demand for specific performance as would overcome the showing that was made, is not certain. But we understand the rule of practice to be that, in equity cases tried here *de novo*, the reasoning of the trial court will not control, if from the whole record it is made to appear that a proper decree was rendered.

"The question before us is not whether the lower court ar-

rived at a correct conclusion by an incorrect process of reasoning, but whether, considering all the evidence, its decision was the proper one to be entered." *Kane v. Dawson,* 52 Wash. 411, 100 Pac. 837.

Nor do we think that respondents are to be estopped from asserting the merit of their case because they did not appeal. As we have said, no findings of fact were made to which exceptions might have been entered. An exception to the decree was unnecessary. Rem. & Bal. Code, § 382. The decree was sufficient in form. It granted the prayer of the complaint, that a time be fixed within which all sums due might be paid under the contract upon penalty of forfeiture. Respondents wanted nothing more, and why an appeal should be taken in such a case is not made clearly to appear in argument, nor is it sustained by authority.

"But, without entering into a discussion of these legal propositions, this court has frequently decided, in harmony with universal authority, that in an equity case where all the testimony is here for our inspection, even though the lower court may render a judgment based upon a proposition of law which cannot be sustained, if the judgment is right and can be sustained upon any legal principle, it will not be reversed." *Sanders v. Bartelt,* 24 Wash. 244, 64 Pac. 149.

In this case the rule could not be otherwise, for it can make no difference to respondents upon what ground the court based its decree, so long as a specific performance was denied. They could not be aggrieved thereby. Nor can it make any difference to appellant. A denial of its prayer for specific performance for want of equity is equivalent to a refusal because its demand is not in accord with the true contract of the parties.

Believing that a mistake was clearly shown, and that respondents are entitled to a reformation of the contract to conform to the agreement of the parties, it becomes unnecessary to discuss the law or the facts relied upon to show an anticipatory breach of the contract.

It is earnestly contended that we should consider the

equities of appellant and its stockholders who must lose the amounts heretofore paid. The hardship of the case is to be deplored, but when men buy on contract, expecting to sell to others in order to cover their obligation, courts cannot relieve their default except to grant a period of grace where the equities of the case warrant it. This has been done, both by the contract of the parties and by the decree of the court, and no reversible error occurring in the record, it is incumbent on us to affirm the decree of the trial court. It is so ordered.

DUNBAR, C. J., MORRIS, ELLIS, and CROW, JJ., concur.