[No. 15246. Department One. May 31, 1919.]

ISRAEL G. HARLAN, *Appellant,* v. MARCUS L. McGRAW et al., *Respondents.*[1]

MINES AND MINERALS (17)—COAL LANDS—LEASE—FORFEITURE—WAIVER. A coal mine lease, calling for payment of royalties on all coal mined and giving the lessor the right of oversight and inspection of operations, cannot be forfeited for waste in using coal for ballast, if the lessor permitted the lessee to mine coal for ballast and exclude the same from the royalty account; at least, not until specific demand had been refused.

SAME (17)—COAL LANDS—LEASE—BREACH. Where a coal mine lease pledged the property as security for the payment of rental, the filing of labor liens against the property is not such a breach as would warrant forfeiture of the lease, especially where the liens have been fully paid.

EQUITY (19) — MINES AND MINERALS (17) — FORFEITURES — COAL MINE LEASE. While equity may forfeit a coal mine lease for default in the payment of a few month's royalties, it will leave the lessor to his remedy at law, where the amount involved was small, the lease had a long time to run, valuable improvements had been made, and the default was due to a mistake in the lessee's construction of the contract.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered September 13, 1918, upon granting a nonsuit, dismissing an action to cancel a lease, tried to the court. Affirmed.

[1]Reported in 181 Pac. 882.

*C. D. Cunningham,* for appellant.

*Ralph A. Coan* and *Miller & Wilkinson,* for respondents.

TOLMAN, J.—Appellant, on the 19th day of September, 1916, being then the owner of the real property therein described, made a written lease of certain coal lands to the respondent Marcus L. McGraw, who afterwards assigned his rights thereunder to the Centralia Coal Mining Company, a corporation. The provisions of the lease, so far as they are material to the issues here to be determined, are as follows:

"The party of the second part shall pay, and he does hereby agree to pay to the party of the first part as rental for said land and as minimum royalty on coal mined therefrom, one thousand dollars per year to cover the first ten thousand tons mined or less, said one thousand dollars to be paid at the rate of one hundred dollars per month on the 10th day of each and every month, beginning with the 10th day of October, 1916, and continuing on the 10th day of each and every month thereafter during the term of this lease, save and except that during the months of June and July of each year, said payment shall be discontinued; and for all coal mined in excess of the first ten thousand tons per year, the party of the second part agrees to pay ten cents per ton of two thousand pounds, mine run coal, taken from said lands, on the 10th day of each and every month, said royalty to be payable at the Field & Lease Bank, Centralia, Lewis county, Washington, in United States Gold Coin; it being the intention of the parties hereto that there shall be a settlement once every month between the parties for the purpose of determining the amount of coal mined in the previous month, and that if said settlement shall show that more than one thousand tons of coal have been mined in the previous month, then the party of the second part shall pay to the party of the first part the sum of ten cents per ton for all

coal mined in excess of one thousand tons, this to continue during every month covered by this lease, save and except the months of June and July of every year, in which months the party of the second part shall only be required to pay ten cents per ton for all coal actually mined during said months.  .  .  .

"It is further stipulated and agreed as part consideration of this lease, that the party of the first part shall have a lien on all machinery, equipments, cars, buildings and other property erected and to be erected on said lands, or in the mine or mines, made by the party of the second part, for any money due the party of the first part, under this lease, which said lien shall be a prior claim to all other liens, including labor liens, and the party of the second part hereby pledges to the first party all such property of whatever kind and description belonging to him or hereinafter acquired by him, his successors or assigns, that may be placed on said land during this lease, or placed in said mine or mines in connection therewith, to secure any money becoming due, and the said party of the second part shall have the right to remove said machinery and equipment and buildings only after such money has been paid.  .  .  .

"It is further stipulated and agreed that in respect to the several provisions herein, referring to the performance of acts within certain named period of time, time being of the essence of this contract, and in case of the failure of the party of the second part to pay in full any year's rental under this lease at the time herein specified, or to pay any taxes or assessments before the same become delinquent, or in any way fail to fulfill the terms of the lease, then this lease may be forfeited and terminated at the option of the party of the first part."

Appellant, in his complaint, alleges that, under this lease, the lessee became obligated to pay as royalty at least $100 on or before the 10th day of each and every month, except the months of July and August in each year, and in addition thereto, the sum of ten cents per ton for all coal mined over and above one

thousand tons in any such month; and further alleged that the defendants, and each of them, had defaulted and breached the covenants of the lease, in that they had failed and refused to pay each of the $100 monthly payments which became due on the 10th day of January, 1918, the 10th day of February, 1918, the 10th day of March, 1918, the 10th day of April, 1918, and the 10th day of May, 1918; the complaint also alleges a further breach, in that the defendants suffered and permitted liens for labor to be filed against the mine and appellant's property and interest therein of upwards of. $4,000, and that although due demand had been made, they had wholly failed to satisfy and discharge said liens, and the same were and are an encumbrance and lien upon the appellant's property. The prayer of the complaint is for judgment cancelling and annulling the lease and excluding the defendants, and each of them, and all persons claiming, or to claim, by, through, or under them, or any of them, from the property, and enjoining them from claiming or asserting any right, title or interest therein. In due time respondents answered to the complaint, alleging that all sums due for rental provided for in the lease had been fully paid, and no amount whatever was due the plaintiff on account thereof; and further, admitting that certain liens had been filed, but alleging that the lien claimants had been fully paid, and that no such liens had been filed on or against the property of the plaintiff. Upon these issues the case was called for trial, and at that time counsel for appellant moved the court for leave to amend the complaint by alleging the following as an additional ground for forfeiture:

"That at all times since the lease in question was executed, the defendants have operated a coal mine upon the lands and premises described in the lease and

in this complaint. That by the terms of the lease it is provided that payments for royalty upon the coal shall be made at ten cents per ton, mine run. That, as a matter of fact, at all times since this lease was executed down until the time of the commencement of this action, while the defendant was operating the mine, it committed great waste in this: That of the coal which was extracted from the ground they hauled out and scattered around the mine and used as ballast upon a railroad track about 7,000 tons, which was never accounted for to the plaintiff by the defendant; that by reason of the fact that this coal has been scattered about it is impossible to ascertain the amount of it or to determine the amount of royalties that are earned under the lease for such coal as has been wasted and dissipated. That although frequent demands have been made for the amount and use of scales in weighing of all coal, the defendants failed and refused to do so, and by reason of their waste they have forfeited all rights in and to said lands and premises.''

Respondents objected to the amendment, first, upon the ground that it came too late, the case being then ready for trial, and that the proposed amendment would raise new issues involving considerable time and labor upon their part to meet such issues; and also objected upon the further ground that, accepting the statement of counsel as embodied in the offer to amend as true, the facts stated made no ground for forfeiture of the lease. Counsel for appellant offered to allow additional time to meet the proposed issue, and respondents still objecting, the trial court refused to allow the amendment, and directed that the trial proceed upon the issues as framed. Thereupon it was stipulated that, prior to the commencement of this action, workmen employed in and about the mine filed liens for labor upon all of the machinery and equipment of the mine, but asserted no lien against the land; that subsequently an action was brought and judgment rendered against the Centralia Coal Mining Company

for a sum aggregating approximately $3,000, based
upon such labor liens, and that thereafter the defend-
ants paid such judgment in full and satisfied the rec-
ord.  It was further stipulated that the last coal mined
under the lease was on January 28, 1918, no coal being
mined subsequent to that date; that, on February 28,
1918, the defendants paid to the plaintiff the sum of
$324.13, which covered the balance of the royalty of
ten cents per ton for all coal actually mined up to that
time; and that, on the 10th day of May, 1918, defend-
ants paid to the plaintiff the further sum of $54.95,
which, together with the royalties theretofore paid for
coal actually mined at ten cents per ton, made up the
full sum of $1,000 paid as rental after the 19th day of
September, 1917.  It was further stipulated that, the
day before this action was commenced, plaintiff went
to the Field & Lease Bank at Centralia, Lewis county,
Washington, and there demanded payment of the sum
of $100 per month, minimum royalty for the months
of February, March, and April, 1918, and that there
was no money there with which to meet said demand,
and said minimum royalty was not paid.  It was still
further stipulated that, after the commencement of
this action, and on August 10, 1918, and again on Sep-
tember 10, 1918, defendants deposited in the Field &
Lease Bank at Centralia the sum of $100 to cover the
minimum payments provided in the lease for the
months of August and September, but that plaintiff
had refused to accept the money so deposited.  Neither
party offered any other testimony, and the trial court,
holding that no ground for forfeiture had been estab-
lished, entered a judgment of dismissal, from which
this appeal is prosecuted.

It will be observed, and must be constantly borne in
mind, that appellant is seeking only the forfeiture and

cancellation of the lease, and does not in this action seek to enforce any rights which he may have other than the right of forfeiture. This being so, it seems manifest that the trial court did not err in denying leave to amend the complaint. The lease, in addition to the provisions quoted, gave the appellant the right of oversight and inspection of operations, in order to enable him to know at all times the amount of coal being mined, and if he permitted the respondents to mine and use coal for ballast and to exclude the material so used from the royalty account, he should not be permitted to claim a forfeiture by reason thereof; at any rate until such time as he had made a specific demand and his demand had been refused.

Nor can we hold that the filing of labor liens upon the property of the lessee, which was, by the terms of the lease, first specifically pledged as security for the payment of the rental, was such a breach as would warrant a forfeiture; especially when, as here, the liens have been fully paid. We find no covenant in the lease that the property of the lessee will be kept clear from subsequent labor liens, nor any agreement that a failure to so do will work a forfeiture.

While that portion of the lease which provides for the payment of rental and royalty must, we think, be construed as appellant contends, and effect be given to the language used providing for monthly settlements and the payment of royalty each month on all coal mined in excess of 1,000 tons in the preceding month; yet, as equity abhors a forfeiture, and as this action was brought for no other purpose, it does not follow that, because the parties differ in their construction of the terms of the lease, the mistaken party will be penalized to the extent of enforcing a forfeiture against him. It is suggested in respondents' brief that the

parties hereto had, until shortly before the institution of this suit, themselves, by their act, placed a construction upon the contract in harmony with respondents' contentions. But neither in the pleadings nor the stipulated facts does that appear, except as it may be inferred from the fact that an attempt to forfeit was not sooner made, and by the acceptance of the payment of $54.95 made on the 10th day of May, 1918. Appellant asks for no judgment except that of forfeiture; and in view of the length of the term created by the lease, the probable value of the improvements as contemplated by the terms of the lease, the comparatively small amount which has been withheld from appellant, and the stipulated fact that he demanded that sum but one day before the bringing of this suit, we think the rule laid down by this court in *Walker v. McMurchie,* 61 Wash. 489, 112 Pac. 500, must be followed. It is there said:

"Equity has ever been jealous of the right of forfeiture, and has never enforced it unless the right thereto has been so clear and insistent as to permit of no denial."

The general rule appears to be well stated by the supreme court of Illinois in *Tarr v. Stearman,* 264 Ill. 110, 105 N. E. 957, where it is said:

"Courts of equity, as well as courts of law, recognize the rights of the parties to a contract to stipulate for penalties and forfeitures, but it is a rule of universal application that courts of equity will never affirmatively enforce either a penalty or a forfeiture. (2 Story's Eq. Jur.—13th ed.—sec. 1319; 16 Cyc. 80.) It is a well settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture. The few

apparent exceptions to this doctrine are not real exceptions. In fact, there are no exceptions. Those which appear to be so all depend upon other rules and principles.''

See, also, 16 Cyc. 80, and cases there cited. There being no suggestion of the insolvency of respondents, or either of them, or allegation that such remedy is inadequate, appellant will be left to pursue his remedy at law until such time as it shall appear that the legal remedy is inadequate.

Judgment affirmed.

CHADWICK, C. J., MITCHELL, MAIN, and MACKINTOSH, JJ., concur.