[No. 26597.   Department Two.   August 23, 1937.]

RALPH FRANKLIN, *as Receiver, Respondent,* v. GILBERT ICE CREAM COMPANY *et al., Appellants.*[1]

*Nelson R. Anderson,* for appellants.
*Ralph E. Franklin,* for respondent.

HOLCOMB, J.—Respondent is the receiver of Neptune Fountain Lunch, a corporation, which will be hereinafter mentioned as Neptune. Appellants are the Gilbert Ice Cream Company, a corporation, hereinafter referred to as the Gilbert company, and W. C.

[1]Reported in 71 P. (2d) 52.

Gilbert, president of the Gilbert company, who, together with his wife, owns all of its stock. McKesson-Stewart-Holmes Drug Company is the owner of certain store fixtures involved in this suit and will be mentioned as the Drug company. Wiseman's, mentioned in the findings of fact and in the evidence, is a firm composed of Bert and Dick Wiseman.

After a trial to the court without a jury, it found in favor of respondent against both the Gilbert company and W. C. Gilbert as an individual for $377 and costs and dismissed their cross-complaint for damages.

After making its first finding that, in a certain cause pending in King county against Neptune, a corporation, respondent was duly and regularly appointed receiver for that corporation, qualified, is still acting as such, and that, by an order duly entered in that proceeding, he was directed to institute this action, the court made extensive findings which will be set out in full.

The other findings made by the trial court are:

"That Gilbert Ice Cream Company is a corporation with its principal place of business at Seattle. That W. C. Gilbert is president thereof and owner, with his wife, of practically all of the stock therein. That W. C. Gilbert is the manager of said business and personally conducted the negotiations hereinafter referred to.

"That on or about July 8, 1932, Neptune Fountain Lunch was desirous of purchasing certain equipment located in premises at 1301 east 45th street, Seattle. That said equipment was owned by McKesson-Stewart-Holmes Drug Company. That Neptune Fountain Lunch did not have credit upon which to purchase said equipment. That Gilbert Ice Cream Company is engaged in wholesale ice cream business and desired to secure Neptune Fountain Lunch as an account for its products. That thereafter, in order that Neptune Fountain Lunch might get the equipment and so that Gilbert Ice Cream Company might get the account,

the latter purchased said equipment on a conditional sale contract for $1,250, payable $14 weekly with interest at 8%, from McKesson-Stewart-Holmes and turned said equipment over to Neptune Fountain Lunch. That Gilbert Ice Cream Company at no time had nor intended to have possession of said equipment. That it entered into the transaction merely as an accomodation to Neptune Fountain Lunch, thereby guaranteeing payment to McKesson-Stewart-Holmes for said equipment and in effect becoming guarantors for the purchase by Neptune Fountain Lunch, and loaning its credit to Neptune Fountain Lunch.

"That the payments for the equipment were to be made by Neptune Fountain Lunch to Gilbert and the latter was to remit the payments to McKesson-Stewart-Holmes, so that all money paid to Gilbert by Neptune Fountain Lunch was to be paid over to McKesson-Stewart-Holmes.

"That a written contract was subsequently entered into in June of 1933 between Gilbert Ice Cream Company and Neptune Fountain Lunch and Wiseman's, which *provided* the sale to Neptune Fountain Lunch by Gilbert Ice Cream Company of the equipment for $1250 and provided Neptune Fountain Lunch should assume and fulfill all obligations of Gilbert Ice Cream Company in the latter's contract with McKesson-Stewart-Holmes. Said contract further provided for exclusive use of Gilbert Company products by Neptune Fountain Lunch and Wiseman's; that Neptune Fountain Lunch should make payments of $14 per week to Gilbert Company and if the latter failed to make the payments to McKesson-Stewart-Holmes, then Neptune Fountain Lunch could pay McKesson-Stewart-Holmes direct and deduct the amounts so paid from any sums owed to Gilbert Company; that in the event of a breach by Neptune Fountain Lunch or Wiseman's, Gilbert Company could repossess the equipment or sue Neptune Fountain Lunch for the balance due under the contract.

"That up to June 22, 1934, Neptune Fountain Lunch made payments to defendants on account of the purchase price of said equipment totalling $1,114. That on said date the balance owing by Neptune Fountain

Lunch was $252.67. That until about June 6, 1934, Neptune Fountain Lunch had no information that the defendants were not paying over the amounts received to McKesson-Stewart-Holmes. That Neptune Fountain Lunch was informed by McKesson-Stewart-Holmes on about June 22, 1934, that there was due to it on account of said equipment, about $630.

"That on occasions prior to June, 1934, Neptune Fountain Lunch had been delinquent in payments on the aforementioned contract and on some of these occasions, defendants had notified Neptune Fountain Lunch to pay up or it would repossess. That on one occasion defendants notified Neptune Fountain Lunch that it elected to forfeit the contract, but that as on the other occasions, nothing was done towards repossession, that Neptune Fountain Lunch continued to make payments on the contract and the defendants to receive said payments, thereby waiving said notices. That on June 4, 1934, Neptune Fountain Lunch was in default in its payments and defendants gave notice that unless the delinquencies were paid by June 14, defendants would forfeit the contract. That at the time of said notice neither party knew the amount of the delinquencies or how much was then owing on the contract. That thereafter negotiations took place between the parties, which tolled the notice of June 4th, to determine the amount due, which negotiations continued until about June 22, 1934, at which time it was ascertained by a statement from A. P. Cloes & Co. who audited the books of Neptune Fountain Lunch, that there was then owing by Neptune Fountain Lunch, the sum of $252.67. That on June 26th, 1934, Neptune Fountain Lunch tendered this amount to defendants and this tender was refused. That on June 25th, 1934, defendants notified Neptune Fountain Lunch by registered letter received on June 26th, 1934, that it elected to forfeit the contract. That though this letter recited a demand for possession of the property, defendants made no effort to take possession of said property and did not repossess said property.

"That on July 5th, 1934, defendants notified McKesson-Stewart-Holmes that it was abandoning the con-

tract and did abandon its contract with McKesson-Stewart-Holmes.

"That Neptune Fountain Lunch bought its products of defendants according to its contract until August 1, 1934, which was after defendants abandoned said contract *as aforesaid.* That Wiseman's purchased defendants' products until May 23, 1934, *and purchased no more thereafter.*

"That about July 17, 1934, Neptune Fountain Lunch was notified by McKesson-Stewart-Holmes that unless the balance due them of about $630 was paid by July 25, 1934, the latter would forfeit its contract and repossess the property. That thereafter Neptune Fountain Lunch negotiated with McKesson-Stewart-Holmes and secured an extension of time to July 31, 1934. That on July 28, 1934, Neptune Fountain Lunch notified defendants that unless it paid this sum to McKesson-Stewart-Holmes by July 31, 1934, Neptune Fountain Lunch would do so and would hold defendants for the difference of the amount paid over the amount owed the defendants. That on August 1, 1934, Neptune Fountain Lunch paid McKesson-Stewart-Holmes the sum of $629.67, being the sum still due to it on account of the purchase price of said equipment. That said payment was necessary to prevent McKesson-Stewart-Holmes from repossessing the equipment which it would have done had not the payment been made on that date.

"That defendants received from Neptune Fountain Lunch the sum of $377 on account of the purchase price of said equipment, more than it paid over to McKesson-Stewart-Holmes, which should have been paid by the defendants to McKesson-Stewart-Holmes, to apply on the contract. That Neptune Fountain Lunch was later compelled to pay this sum a second time, this time to McKesson-Stewart-Holmes."

The court concluded that respondent is entitled to judgment against both of appellants for $377 and costs. Judgment was entered accordingly, from which this appeal was taken.

Appellants assign twenty-nine assignments of error,

which include all findings except the first, and argue them under three heads. The principal contentions are that the findings are inconsistent and contradictory and do not support any judgment in favor of respondent. With these contentions, we cannot agree. The facts were undisputed except in one or two comparatively unimportant matters.

The law is well settled here that, unless this court discovers a preponderance of evidence against the findings, they are never disturbed but are treated as verities. *Townsend v. Rosenbaum,* 187 Wash. 372, 60 P. (2d) 251.

Nearly all of the contentions made by appellants involve issues of fact. Appellant Gilbert admitted, in testifying, that appellants had received $1,114 on the contract from Neptune, did not pay it all over to the Drug company, and did not inform Neptune that they had not done so.

In August, 1934, in order to retain the equipment, Neptune was compelled to pay the Drug company the balance still owing to it of $630. It thus paid $377 more than it owed on the equipment, which appellants received and retained. Appellant Gilbert also admitted that he had obligated himself to pay the $1250 under contract for Wiseman's, and that it was for the benefit of Neptune. It therefore conclusively appeared that appellants were merely acting for Neptune in making the purchase from the Drug company.

The rule is that agency, while not presumed, may be proven by facts and circumstances and does not need to be established by direct evidence. *Stockdale v. Horlacher,* 189 Wash. 264, 64 P. (2d) 1015.

It is manifest that the trial court correctly construed the testimony and determined that appellants were agents for Neptune. That disposes of this case. It was a clear case of conversion by agents.

The many cases cited by appellants in their opening brief, reply brief, and additional authorities, are upon widely different facts and issues than those involved here. They do not apply to this case.

Moreover, if necessary to a determination of this matter, by accepting payments after they were past due, appellants waived strict performance and there could have been no forfeiture without additional notice of intention to enforce with a reasonable time to the vendee to make up the payments. *Wadham v. McVicar,* 115 Wash. 503, 197 Pac. 616; *Beardslee v. North Pacific Finance Corp.,* 161 Wash. 86, 296 Pac. 155; *Knowles v. LaPure,* 189 Wash. 456, 65 P. (2d) 1260.

Appellants also contend that no personal judgment should have been entered against appellant W. C. Gilbert. They argue that a breach by the Wisemans was not a breach by Neptune, and that no fraud was shown on the part of W. C. Gilbert.

A fiduciary relationship existed for breach of which W. C. Gilbert became personally liable. He concealed from Neptune the fact that he was not making the payments over to the Drug company. There was no denial that appellants did not account for the money. Gilbert, as manager of the corporation and the officer who handled the transaction throughout, became personally liable. While the word "fraud" was not used by the trial court in the findings, the result is the same. It amounted to legal fraud. See *Dodson v. Economy Equipment Co.,* 188 Wash. 340, 62 P. (2d) 708.

The judgment is affirmed.

STEINERT, C. J., MAIN, BEALS, and ROBINSON, JJ., concur.