[No. 31225. Department One. February 27, 1950.]

ARTHUR F. MOELLER *et al., Respondents,* v. GOOD HOPE
FARMS, INC., *et al., Appellants.*[1]

[1]Reported in 215 P. (2d) 425.

*Simmons & McCann* and *Clarke, Stone & Hoover,* for appellants.

*H. I. Kyle* and *Houghton, Cluck, Coughlin & Henry,* for respondents.

SCHWELLENBACH, J.—This is an appeal from a judgment forfeiting a real-estate contract, removing the cloud upon sellers' title, and ordering the issuance of a writ of restitution.

On January 7, 1947, Arthur F. Moeller and wife, and Louie F. Moeller and wife, as sellers, and Good Hope Farms, Inc., as purchaser, entered into a real-estate contract for the sale of a ranch and dairy business near Enumclaw. Wadler and wife owned practically all of the stock of Good Hope Farms, Inc. The purchase price was one hundred

fifteen thousand dollars, of which twenty-five thousand dollars was paid down. The contract provided for the payment of one thousand dollars on February 1, 1947, and one thousand dollars on the first day of each month thereafter until the entire purchase price was paid. It further provided:

"Time is of the essence hereof, and in the event the purchaser shall fail to comply with or perform any condition or agreement hereof promptly at the time and in the manner herein required, the seller may elect to declare all of the purchaser's rights hereunder terminated, and upon his doing so, all payments made by the purchaser hereunder and all improvements placed upon the premises shall be forfeited to the seller as liquidated damages, and the seller shall have the right to re-enter and take possession of the property."

The contract was placed with the First National Bank of Enumclaw for collection. Unless otherwise designated, payments of one thousand dollars were made to the bank on the following dates: February 1, 1947; March 6, 1947; April 15, 1947; May 15, 1947; July 3, 1947 ($2,000); August 8, 1947; September 10, 1947; October 3, 1947; November 12, 1947; December 18, 1947; January 27, 1948; March 8, 1948; March 30, 1948; April 21, 1948; June 8, 1948; July 12, 1948; August 9, 1948; August 13, 1948 ($12,295.50).

On March 5th and on March 10th, 1948, Mr. Kyle, at the request of the sellers, wrote the purchaser requesting prompt payments. Mr. Wadler, on March 19th, wrote a very contemptuous letter in reply. On August 5, 1948, the purchaser was two payments in arrears, and Mr. Cluck wrote the following letter.

"Good Hope Farms, Inc.
R. F. D. No. 2
Enumclaw, Washington
Gentlemen:

"We are attorneys for Arthur F. Moeller, Karen Moeller, Louie F. Moeller and Clara A. Moeller who are selling to you under contract dated January 7, 1947, the following described real estate, livestock and equipment situate in King County, Washington:

[Here follows description of the real estate, livestock, and equipment.]

"The above named sellers have directed us to call to your attention that two payments of $1,000.00 each which were due on July 1, 1948 and August 1, 1948 have not been made.

"Our clients have further directed us to notify you and you are hereby notified that unless all delinquent payments under the above contract, together with the additional payment of $1,000.00 which will be due on September 1, 1948, are made on or before September 1, 1948, and unless any taxes on the property which may be delinquent are paid in full on or before that date the above named sellers will elect without further notice to you to declare all of your rights under said contract terminated and all payments made by you thereunder and all improvements placed by you upon the premises will be forfeited to the sellers as liquidated damages and the sellers will reenter and take possession of the property.

"Yours very truly,
HOUGHTON, CLUCK, COUGHLIN & HENRY
By [signed] JACK R. CLUCK"

One payment was made on August 9, 1948, in response to this letter.

Wadler then advertised an auction sale, to be held August 14, 1948, of the dairy herd and equipment, as well as the real estate. The contract of January 7, 1947, provided that when the unpaid balance of the purchase price would not exceed sixty-five thousand dollars, the sellers would give the purchaser a bill of sale covering the livestock, and that, in the meantime, the purchaser would not dispose of any livestock or equipment without replacing it with livestock or equipment of equal or greater value. The sellers then commenced an action to restrain the sale. This matter came before Judge Clay Allen on August 11, 1948, who ordered the sale enjoined unless, prior to the sale, the purchaser had reduced the balance due under the contract to sixty-five thousand dollars. The order further provided that notwithstanding such reduction "the corporate defendant shall not be relieved from making the monthly pay-

ments which fall due under said contract on September 1, 1948, and thereafter."

It was in response to this order that the payment of $12,295.50 was made on August 13th, which put the contract in good standing and reduced the balance to sixty-five thousand dollars. The sale of the livestock was then held.

Wadler, feeling that the eleven thousand dollars which he paid to reduce the balance to sixty-five thousand dollars, should be applied on his monthly payments as they fell due, then commenced an action to enjoin the Moellers from forfeiting the contract. This matter came before Judge Malcom Douglas on September 2, 1948, who orally announced at the close of the hearing that the injunction would be denied. The formal order, however, was not signed until September 8, 1948.

On September 2, 1948, Wadler was in Kennewick. When informed of Judge Douglas' order, he contacted one Lyons, his man at the ranch, who went to the bank the next day and obtained one thousand dollars. Lyons tried to make the payment to each of the Moellers, but they were both, for some reason or other, out of town. Mrs. Moeller refused to take the money. Lyons then went to the bank and offered the payment, but it had been instructed to refuse payment because of the forfeiture of the contract. He then took the money to Mr. Stone, Mr. Wadler's attorney in Seattle. Mr. Stone thereupon formally tendered the money to Mr. Houghton, and, upon his refusal, paid it into the registry of the court. All of this transpired on September 3rd. Similar tenders of one thousand dollars and payments into the registry of the court, were made on the first day of each month up to the time of trial.

On September 3rd the Moellers notified Good Hope Farms, Inc., that it had failed to comply with the notice of August 5th, in that it had failed to make the payment of one thousand dollars falling due September 1st; that because of such default they elected to declare all rights under the contract terminated and made demand for possession forthwith. On November 8th, notice was served on the

purchaser to vacate within three days. The purchaser refused to vacate and this action was commenced November 16, 1948.

 The right to declare a forfeiture is derived from the express agreement of the parties. If they choose to make time the essence thereof and provide for a forfeiture in the event of a breach of such covenant, such provisions are valid and enforcible. But the right of a vendor to demand strict performance of the contract in these respects can be waived. In *Wadham v. McVicar*, 115 Wash. 503, 197 Pac. 616, we said:

"Parties have a right to agree that payments must and will be made at a designated time, and that, if not so made, the contract may be terminated and a forfeiture declared, and the courts will strictly enforce such agreements. But the parties, having made such a contract, may by their conduct waive its strict performance, and where there is such a waiver neither party can put the other in default or claim a forfeiture without first having given notice of intention so to do, with a reasonable time within which such other party may perform. Forfeitures are not favored in the law, and courts will promptly seize upon any circumstances arising out of the contract or the actions or relations of the parties in order to avoid a forfeiture. Strict performance may be waived by receiving, without objection, payment after the time provided in the contract or by granting other indulgences. [Citing cases.]"

In the case at bar, the respondents had accepted many payments after they had become due, indicating by this conduct that they would not insist upon strict performance. This constituted a temporary waiver of the provision in the contract making time of the essence. Thereafter, before respondents could declare a forfeiture for failure to make current or future payments when due, it was incumbent upon them to first give notice of their intention so to do with a reasonable time within which the purchaser could perform. See *Alhadeff v. Van Slyke*, 176 Wash. 244, 28 P. (2d) 797; *Bulmon v. Bailey*, 22 Wn. (2d) 372, 156 P. (2d) 231. This was accomplished by respondents in their letter of August 5th wherein they notified the purchaser, in no un-

certain terms, that if it did not make the September 1st payment on time, they would elect "without further notice to you to declare all of your rights under said contract terminated." That the purchaser understood the clear import of that notice is evidenced by the fact that it went to court on August 27th and sought to enjoin the sellers from declaring the threatened forfeiture on September 1st.

■ Appellants contend, however, that the institution of the injunction action stayed the proceedings until the entry of the formal order on September 8th so that no forfeiture could be declared prior to that date. This contention would be well-founded had appellants secured a temporary injunction and posted the bond required by Rem. Rev. Stat., § 725 [P.P.C. § 59-15]. But this was not done. The respondents were merely ordered to show cause on September 2nd why their intended forfeiture should not be enjoined. In the absence of a temporary injunction and bond, appellants failed to preserve the *status quo* and respondents were, accordingly, at liberty to proceed with their forfeiture just as if the show cause action had never been instituted. See *Royce v. Public Utility Dist. No. 1,* 26 Wn. (2d) 733, 175 P. (2d) 624.

■ The respondents, then, under the contract and under the facts had a right to and did declare a forfeiture. Appellants had notice that if September 1st passed without payment of the installment due on that day, their contract was forfeited, and no further notice was necessary to effect the forfeiture. But it is the settled rule in this state that forfeitures are not favored in law and are never enforced in equity unless the right thereto is so clear as to permit of no denial. In order to avoid the harshness of forfeitures and the hardship that often results from strict enforcement thereof, the courts have frequently granted a "period of grace" to a purchaser before a forfeiture will be decreed. Such procedure is not a denial of the right to forfeit the contract, but is a condition imposed upon that right when the equities of a particular case warrant it. See *Dill v. Zielke,* 26 Wn. (2d) 246, 173 P. (2d) 977; *De-White v. Dent,* 177 Wash. 418, 31 P. (2d) 1018.

■ At the close of the trial in the present case, the court announced that the purchaser would be allowed thirty days' grace within which to pay the balance of the contract, with interest, plus the costs of the action, or the contract would be forfeited. In view of the fact that appellants had, in a little over a year and a half, paid over fifty thousand dollars on a one hundred and fifteen thousand dollar contract; that they made improvements on the property, though their value was disputed; that they took immediate steps to make the September payment after the court, on September 2nd, indicated an adverse decision; and that appellants continued to make the monthly payments into the registry of the court as they fell due, up to the time of trial—in the light of these circumstances—we conclude that the trial court was warranted in granting appellants a period of grace.

Subsequent to the time of this pronouncement, various hearings were held until finally, two months and twelve days after completion of the trial, the parties appeared before the court for the entry of judgment. Although the court had stated that the payment was to be in cash, appellants, through Wadler, tendered as part of the consideration a notice by the Federal Land Bank of Spokane to the National Farm Loan Association, indicating that they would loan $22,700 to appellants. This loan, however, was subject to approval of title. A title report, introduced at this hearing, shows a mineral reservation and several easements against the land. The respondents offered to stipulate that the appellants be given an additional thirty days in which to raise the cash upon the condition that the contract be modified to state that the property would be taken subject to the easements and reservation. Upon the refusal of appellants to so stipulate, the court signed the decree of forfeiture from which this appeal was taken.

With respect to title and the nature of the deed, the contract provided:

"The seller agrees, upon receiving full payment of the purchase price and interest in the manner above specified, to execute and deliver to purchaser a Warranty Deed and

Bill of Sale to the property, excepting such part thereof which may hereafter be condemned and excepting personal property theretofore conveyed to purchaser, if any, free of incumbrances except those above mentioned, and any that may accrue hereafter through any person other than the seller.

"The seller has delivered, or within ten days herefrom will procure and deliver, to the purchaser, a title policy in usual form issued by a title insurance company, insuring the purchaser to the full amount of said purchase price against loss or damage occasioned by reason of defect in, or incumbrance against, seller's title to the premises, not assumed by the purchaser, or as to which the conveyance hereunder is not to be subject."

 Since the last payment was not due at the time the contract was forfeited, respondents were not then required to tender a deed. See *Van Geest v. Willard,* 27 Wn. (2d) 753, 180 P. (2d) 78. However, when the court granted a grace period during which appellants could pay the balance of the purchase price, tender of that balance and tender of a deed conforming to the contract became mutual, concurrent obligations. While appellants failed to tender cash as directed by the court, respondents failed to tender the requisite warranty deed, free of encumbrances. The above quoted covenants are just as much a part of the contract as those portions providing for a forfeiture and making time of the essence. Apparently this issue was not raised until the final hearing. The record contains no evidence from which it could be determined whether or not the easements and reservation were encumbrances which depreciated the value of the land. From the state of the record as it has come to us, the easements and reservation in question might come within the definition of an "encumbrance" as set forth in *Hebb v. Severson,* 32 Wn. (2d) 159, 201 P. (2d) 156, wherein we said:

"An 'encumbrance' has been defined by this court . . . as a burden upon land depreciative of its value, such as a lien, easement, or servitude, which, though adverse to the interest of the landowner, does not conflict with his conveyance of the land in fee."

Since, from the record, neither party is entitled to performance from the other at the present time, the judgment is reversed and the cause remanded with these directions:

Appellants shall be given sixty days from the *going down* of the remittitur in which to pay into court the unpaid balance due on the contract, with interest, together with the costs incurred in the action in the superior court, *in cash*. Respondents shall be given sixty days from the going down of the remittitur to deposit in court a warranty deed to the property, free from encumbrances, except those mentioned in the contract, together with a policy of title insurance, as provided in the contract. If, at the expiration of said time, respondents have fully performed the above requirements and appellants have failed to perform as required herein, the judgment appealed from will be reinstated. If at the expiration of said time, appellants have fully performed and respondents have failed to perform as required herein, the contract will be reinstated without forfeiture, and appellants will make the monthly payments as required therein, and will be entitled to withdraw the money which they will have paid into court as required herein. Neither party shall recover costs of this appeal.

SIMPSON, C. J., BEALS, GRADY, and DONWORTH, JJ., concur.