[No. 1887–2.   Division Two.   March 9, 1977.]

RODNEY P. RYKER, ET AL, *Respondents*, v. ROBERT E. STIDHAM, ET AL, *Appellants.*

*John C. Hoover* and *Hoover & Donais,* for appellants.

*Carl H. Skoog* and *Skoog & Mullin,* for respondents.

RINGOLD, J.*—On November 25, 1971, plaintiffs sold vacant land to defendants Robert E. and Clarcy Stidham

---

*Judge Solie M. Ringold is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

pursuant to a standard form of real estate contract common in this state. The purchase price was $28,285, with a down payment of $3,500, and the balance payable in monthly installments of $200 including interest on the diminishing balance. The contract contained the usual "time is of the essence" clause:

Time is of the essence of this contract, and it is agreed that in case the purchaser shall fail to comply with or perform any condition or agreement . . . the seller may elect to declare all the purchaser's rights hereunder terminated, and . . . all payments . . . and all improvements . . . shall be forfeited to the seller as liquidated damages . . .

The purchasers' interest was assigned to their son Terry Stidham and his wife Norma. Panacom Building Systems, Inc., a family–owned corporation, acquired an interest in the property as mortgagee of the purchasers' interest. Panacom was to function as the financing and construction agency to develop and build a complex of houses on adjoining land and the subject property. The corporation made all the payments on the contract. There is no dispute as found by the trial court:

8.

That the Defendants have been delinquent in payment of the installments under the terms of said contract from its inception and during the period from February 1, 1972, to November 19, 1973, the Plaintiffs caused four (4) Notices of Intention to Forfeit said contract and eight (8) letters demanding payment of installments and taxes to be forwarded to the Plaintiffs.

In August 1972, the sellers sent a notice of forfeiture to the purchasers. Subsequently the contract was reinstated, but delinquencies continued until November 19, 1973, when again the sellers declared the contract forfeited. Negotiations between the parties, represented by counsel, resulted on December 8, 1973, in an agreement modifying and reinstating the contract. The agreement, *inter alia*, required the purchasers to pay the delinquencies, and an additional

$50 per month to be held as a reserve fund for taxes. The timeliness of subsequent payments was the subject of negotiation between respective counsel, and the following provision was agreed to by the parties:

Notwithstanding any other provision . . . failure to make any payment of principal, interest or reserve or any portion thereof on or before the due date, shall constitute breach of this agreement and shall render this contract subject to forfeiture at the option of the Seller without further notice to the purchaser.

In 1974 the purchasers made the following payments on the modified contract:

| Date Due | Date Paid | Amount Paid |
|----------|-----------|------|
| January 25 | January 24 | $650 |
| February 25 | February 25 | 250 |
| March 25 | March 26 | 250 |
| April 25 | May 10 | 250 |
| May 25 | May 31 | 230 |
| June 25 | July 2 | 230 |

The principal balance then due was $23,316.77. The property had remained unimproved, other than some grading and surface work done in conjunction with the development of the adjoining site upon which a model home had been constructed. The trial court found: "that said improvement was inconsequential." (Finding of fact No. 13.)

On August 15, 1974, sellers' attorney advised the collecting bank not to accept any further payments. Three days later he advised the purchasers that the contract was terminated and their rights were forfeited. This action was then commenced October 17, 1974, for a decree adjudging the contract terminated, forfeiting the payments and quieting title in the sellers.

After trial, the court found for the sellers, decreeing the contract terminated and forfeited. Exercising his equitable powers, the trial judge granted to the purchasers a

"grace period" of six (6) months from March 26, 1975, during which period said Defendants may redeem the . . . property by paying to the Plaintiffs, . . . ($23,316.77) . . . plus interest thereon . . . and real property taxes . . . [costs and attorneys' fees].

This appeal follows. Numerous assignments of error are alleged which resolve into three issues:

1. Did the sellers breach the contract, as modified, by not setting up a separate account for the tax "reserve fund?"

2. Did the declaration of forfeiture require as a condition precedent prior notice of an intention to forfeit sufficient to give the purchasers an opportunity to cure any delinquencies in payments?

3. Did the trial court abuse its discretion in the exercise of equitable powers to require payment of the entire amount due within 6 months after trial?

Our answer to each of the questions raised by these issues is "No."

### RESERVE FUND

The payments received after the modification were all applied to principal and interest. When the taxes were paid by the seller the amount was added back to the principal sum. The provision for a "reserve fund" does not require a separate bank account. The trial court found:

11.

That as to all sums paid by the Defendants to the Plaintiffs as reserve for taxes, said funds have been properly held and applied by the Plaintiffs.

We agree.

### FORFEITURE

The purchasers argue that payments for March, April, May, and June 1974, were late by 1, 15, 6, and 7 days respectively—and were accepted without protest. Therefore, they argue, there can be no termination of rights and forfeiture without prior notice of an intention to declare a forfeiture.

■ When time has been made the essence of an executory contract for the sale of land, the seller may require strict performance and has the right to terminate the contract and declare a forfeiture for the late tender or nonpayment of the purchase price or any installment due. 91 C.J.S. *Vendor and Purchaser* § 133, at 1069 (1955). This general rule has long been followed in this state. *Dill v. Zielke,* 26 Wn.2d 246, 252, 173 P.2d 977 (1946):

> We are cognizant of the well–established rule in this state that, where time is made of the essence of a contract of sale, the vendor may declare a forfeiture of the contract for the nonpayment of the purchase price or any installment thereof.

The strict performance requirement with respect to time of payment required by contract may be waived by the promisee. The law is well stated by the court in *Bulmon v. Bailey,* 22 Wn.2d 372, 156 P.2d 231 (1945), at 376–77:

> Time of payment of the installments of purchase price was made of the essence of the contracts, and if the vendors had from the beginning insisted upon strict performance they could have forfeited either contract upon the happening of the first default thereof. But they did not do this. They *passively granted indulgences* to the respondent by permitting payments to be made after they were due and *accepting them without protest* and by permitting payments to remain unpaid without in any way making known to her that strict performance would be required of her. When such a situation is allowed to develop by a vendor in a contract like those now before us, strict performance as to time of payment is waived and the vendor cannot put the vendee in default or claim a forfeiture without first having given notice of intention so to do with a reasonable time within which the vendee may perform. *Wadham v. McVicar,* 115 Wash. 503, 197 Pac. 616; *Shaw v. Morrison,* 145 Wash. 420, 260 Pac. 666; *Pacific Finance Corp. v. Webster,* 161 Wash. 255, 296 Pac. 809; *Great Western Inv. Co. v. Anderson,* 162 Wash. 58, 297 Pac. 1087; *Franklin v. Gilbert Ice Cream Co.,* 191 Wash. 269, 71 P. (2d) 52.
>
> The indulgences granted by a vendor may take the form of extensions of time within which to make payment, accepting payments after they are due, as in the

foregoing cases, or allowing payments to remain unpaid, as in the cases of *Walker v. McMurchie,* 61 Wash. 489, 112 Pac. 500; *Grosgebauer v. Schneider,* 177 Wash. 282, 31 P. (2d) 901.

(Italics ours.)

The purchasers would have us rule that the acceptance of the four late payments constitutes a waiver as a matter of law. The acceptance of late payments may limit a vendor's right to declare a forfeiture, *Bulmon v. Bailey, supra,* but that conduct alone does not constitute a waiver of strict performance. *Beltinck v. Tacoma Theater Co.,* 61 Wash. 132, 111 P. 1045 (1910), as cited in *Walker v. McMurchie,* 61 Wash. 489, 112 P. 500 (1911). *See also Wadham v. McVicar,* 115 Wash. 503, 197 P. 616 (1921); *Moeller v. Good Hope Farms, Inc.,* 35 Wn.2d 777, 215 P.2d 425 (1950).

Acceptance of the late payments is evidence which must be considered by the trier of fact, examining also the manner in which the payments were accepted, *i.e.,* passive acceptance, acceptance without objection, acceptance coupled with frequent protests. These are elements which must be weighed together with all other evidence and the reasonable inferences flowing to determine the ultimate fact whether or not the seller waived strict performance.

The trial court found:

15.

That the provision of said contract making "time of the essence" thereof and authorizing strict forfeiture were not waived by the Plaintiffs through their conduct or otherwise. . . . except that the right to declare a forfeiture by reason of defaults occurring prior to the execution of the modification of the contract were waived by the execution of said modification.

We agree. The history of the contract, the payments, the negotiations, the modification agreement, and conduct of the parties do not support a finding that the vendors have waived the requirement of strict performance.[1]

---

[1]In arguing their position the purchasers contend that the trial court was in error by "assuming" that no waiver had been made of the timeliness requirement for payments, that the payments were not "due" under the contract because of

The trial court also found that the modification by its terms constitutes the notice of intention to declare a forfeiture. While this finding was assigned as error, our disposition of the matter makes it unnecessary to discuss this alleged error. It is a fact which the trial court properly considered.

## THE EQUITABLE REMEDY

When it is determined that termination of rights and a forfeiture may be decreed, equity must then determine whether and when it shall be enforced. The trial court did not order a strict forfeiture, but exercised its equitable powers in accordance with the rule laid down in *Dill v. Zielke, supra* at 252:

> It is equally well established, however, that forfeitures are not favored in law and are never enforced in equity unless the right thereto is so clear as to permit of no denial. *Walker v. McMurchie,* 61 Wash. 489, 112 Pac. 500; *Harlan v. McGraw,* 107 Wash. 286, 181 Pac. 882; *Wallis v. Elliott,* 154 Wash. 625, 282 Pac. 928; *Grosgebauer v. Schneider,* 177 Wash. 282, 31 P. (2d) 901; *Mayflower Realty Co. v. Security Sav. & Loan Society,* 192 Wash. 129, 72 P. (2d) 1038, 75 P. (2d) 579.
>
> Recognizing the hardship that often attends a strict enforcement of a forfeiture provision, and confronted with a situation where such enforcement would do violence to the principle of substantial justice between the parties concerned, under the particular facts of a case, the courts of this state have frequently relieved a party from default of payment on an executory contract involving real estate by extending to such person a "period of grace" within which to make such payments. *Rohlinger v. Coletta Land & Orchard Co.,* 64 Wash. 348, 116 Pac. 1095; *Zane v. Hinds,* 136 Wash. 352, 240 Pac. 6; *Wallis v. Elliott, supra; Great Western Inv. Co. v. Anderson,* 162 Wash. 58, 297 Pac. 1087; *Grosgebauer v.*

the waiver, and that therefore there was no default. It would seem that they are placing undue emphasis upon the word "default" as used in the cases pertaining to the issue. Whether termed a "default" or "delinquency" the fact is that a late payment violated the strict performance requirement of the contract. The basic question still remains whether or not there was a waiver.

*Schneider, supra; Central Life Assurance Soc. v. Impelmans,* 13 Wn. (2d) 632, 126 P. (2d) 757.

■ Nor did the trial court decree an immediate termination of all rights or immediate forfeiture. The purchasers contend that the "grace period" permitted for payment of the entire contract balance is error because the contracts do not contain an "acceleration clause." There are three answers to this argument:

1. When the court granted equitable relief from strict forfeiture, it, in effect, contracted for the parties a provision for a "grace period." It is a right which may or may not be granted to the purchasers by equity; with the same powers the court is conditioning the "grace period."

2. The remedy purchasers propose would give them an opportunity to make up the delinquent payments, perhaps with some terms attached. This would reduce the effect of this entire action, starting with the service and filing of the complaint, to that of a notice of intention to declare a forfeiture. No authority is cited by the purchasers for this contention.

3. When a "grace period" is granted, full payment of the balance of the purchase price has been generally imposed by the courts. *Moeller v. Good Hope Farms, Inc., supra.* The remedy fashioned by the trial judge in the instant case is a reasonable exercise of equitable powers.

The judgment is affirmed. Respondents' motion for allowance of attorney's fees in this court is granted; the cause is remanded to the trial court solely for determination of the reasonable amount thereof.

PETRIE, C.J., and REED, J., concur.