[No. 19887.   Department One.   July 14, 1926.]

# J. E. KEYES, *Appellant,* v. MARGUERITE CARMACK, *Respondent.*[1]

[1] CORPORATIONS (132)—ACTIONS BETWEEN SHAREHOLDERS AND OFFICERS. The evidence sustains findings dismissing an action to recover moneys alleged to have been received as treasurer of a corporation, where it appears that defendant was only a nominal treasurer and never received any money of the corporation, all of which was handled by her husband who was the promoter, president and general manager of the corporation.

[2] APPEAL (371)—REVIEW—CORRECT DECISION ON ERRONEOUS GROUND. In an action tried *de novo* on appeal, a dismissal upon the erroneous ground that the action was barred by the statute of limitations will be sustained where it appears that it should have been dismissed upon the merits.

Appeal from a judgment of the superior court for King county, Honorable C. E. Claypool, judge *pro tempore,* entered September 4, 1925, in an action against a corporate officer for an accounting, tried to the court. Affirmed.

*L. H. Wheeler* and *Frank E. Hammond,* for appellant.

*C. H. Steffen* and *Andrew J. Balliet,* for respondent.

ASKREN, J.—This is an action to recover from Marguerite Carmack, upon an assigned account, a sum of money alleged to have been received by her as treasurer of the Carmack Gold & Copper Mining Company, and unaccounted for upon her removal as treasurer.

The facts developed at the trial were, briefly, as follows: G. W. Carmack, the deceased husband of Marguerite Carmack, organized, in 1899, a mining corporation, known as the Carmack Gold & Copper Mining Company. He was its first president, and held that

¹Reported in 247 Pac. 1025.

office continuously until his death in 1922. He was also a sort of general manager and practically "ran" the corporation during his lifetime. He interested others in the venture, but to him was left the control of its policies and general work. The corporation opened a bank account in 1900 in the National Bank of Commerce of Seattle, and appears to have used this account until 1904, at which time there was $1.20 left on deposit. The account was not closed. During this period, G. W. Carmack also had an account in the same bank, and after 1904, when the corporation account had diminished to practically nothing, the account of G. W. Carmack was used to handle corporate business. About 1909, the account was changed to G. W. Carmack and Marguerite Carmack, it being subject to check by either member of the community.

Early in its history, Marguerite Carmack was made treasurer of the corporation, although she kept no books of account, and apparently was no more than nominal treasurer. There were never any returns from the mine except the sum of $3,254.50, which was received between 1916 and 1922, and represented $2,682.90 for timber, $271.60 paid on a judgment, and $300 for rental of property.

It was the custom of G. W. Carmack to pay all the bills for the operation of the mine, including machinery, labor and all other necessary requirements, and then report once a year to the stockholders and trustees. The books also were kept by him. After his death, Marguerite Carmack was ousted as treasurer and this suit begun alleging that the amounts of money heretofore set out had been received by her as treasurer and that she had not accounted for any of it except the sum of $390.28. The court, after hearing the evidence, gave its memorandum decision as follows:

"The plaintiff, alleging himself to be the assignee of the stockholders of the Carmack Gold and Copper Mining Company, sues the defendant, claiming that as treasurer of said company she has failed to safely keep and account for the sum of $2,896.67, which presumably came into her hands as treasurer. The testimony showed that George Washington Carmack, deceased husband of the defendant, was the promoter and organizer of the company, furnishing all the money that went into the enterprise, which proved unprofitable. The defendant here was the treasurer *de jure,* but her husband was treasurer *de facto.* She took no active part in the management of the company, did not participate in its meetings, and was only called in to complete its records by signing on the dotted line. George Carmack's money and the company's money, when it had any, was all kept in a common account subject to check by either Carmack or his wife, the defendant here. She kept no account of anything which throws any light on the subject, and was by all parties and as a matter of convenience in the corporation business, and by common consent, permitted to act merely as a dummy treasurer. No money or other property was ever turned over to the defendant as treasurer. As before stated it was kept in the common account of the defendant and her husband. The stockholders, who were few in number and whose stock was acquired by services in behalf of the enterprise, trusted George Carmack entirely in handling of the property and its funds. The fact that the defendant drew a few checks at the direction of her husband does not change the situation. Practically all that she can say about it now is that her husband was in her opinion an honest man and that with the others she trusted him. Under such circumstances there should be no recovery against her.

"Judgment for the defendant.

"Dated this 29th day of August, 1925,

"C. E. Claypool, Judge Pro tem."

[1] We have carefully read the statement of facts and conclude that the decision of the trial court is fully

justified from the evidence. It is contended by appellant that, having admitted that the money was received, and having failed to show conclusively that it was paid out on behalf of the corporation, respondent must be held liable therefor. But the burden that rests upon respondent must always be measured by the knowledge which should be imputed to her, taking into consideration the manner in which the affairs of the corporation were handled with knowledge and acquiescence of its officers. If the corporation had the respondent in office as a mere nominal treasurer, and allowed the president to act as general manager, to take actual charge, not only of all its properties and the work done thereon, but to pay its bills from the account of the corporation kept in his own bank account, and keep the books of account with reference thereto, it cannot, when his lips are sealed by death, and his evidence not available to respondent, be permitted to insist that she be able to definitely and accurately tell when and how and where he disbursed the corporation funds.

Respondent found, after the death of her husband, and produced at the trial, a statement, prepared by her husband and in his handwriting, showing bills of expense for the year 1916, amounting to $2,541.40, upon which he credited the corporation with the sum of $1,000, evidently the first payment on the timber, which was received in October, 1916. Work was also done in the mine and bills incurred in 1917. The respondent testified positively that all the money received had been paid out by her husband in the work on the mine,—that he paid out the money for everything and attended to all the business. We think the record shows a sufficient meeting of the burden placed upon her under the circumstances developed, and that respondent should not be held liable for any of these funds.

[2]   The court, after announcing its memorandum decision, entered its judgment of dismissal, but placed it upon the ground that the action was barred by the statute of limitations. In this, the court was in error. The respondent, being the nominal treasurer of the corporation, the statute of limitation would not begin to run until demand was made upon her for the money, and this action was brought within the statutory period after that time. But we think it immaterial that the court placed its judgment upon the wrong ground. It is well settled that upon a trial *de novo*, if the court's judgment can be sustained upon any ground, the cause will not be reversed. *Shafer v. United States Casualty Co.*, 90 Wash. 687, 156 Pac. 861.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, BRIDGES, and FULLERTON, JJ., concur.