[No. 30923. Department One. August 16, 1949.]

CARL JONES, *Appellant*, v. STANDARD SALES, INC. *et al.,*
*Respondents.*[1]

[1]Reported in 209 P. (2d) 446.

 

*Keith & Winston,* for appellant.

*Geo. W. Young,* for respondents.

MALLERY, J.—In 1931, H. D. Severson, as a sole trader, commenced a wholesale business called the Standard Sales Company. The business grew to the extent that his income tax for 1946 was $42,187.25. He received six hundred fifty dollars in salary from another source during 1946, but otherwise, this tax was attributable exclusively to taxable income derived from the Standard Sales Company. December 30, 1946, $40,390.75 of this tax remained unpaid.

He divorced his wife in 1941, and by the property settlement became obligated to pay her two hundred dollars a month in return for a release of her community property interest in the business. This obligation was carried as a liability on the Standard Sales Company books for several years prior to this litigation. Originally it was a fifteen thousand dollar liability but was reduced by payments over the years until, on December 30, 1946, the balance due was twenty-six hundred dollars.

The community property settlement liability and the 1946 income tax liability are the subjects of this litigation, as will later appear.

Informed in 1946 that Severson sought to sell his business, Carl Jones discussed with him a proposal whereby Jones would contribute capital to the business and would participate with Severson in its continued operation. In connection with these negotiations, Jones examined the inventory and, on at least one occasion, spent an entire evening inspecting the books.

December 24, 1946, Jones and Severson executed a pre-incorporation contract providing for the formation of a corporation which would purchase Standard Sales Company. The parts of the contract determinative of the issues in this case read as follows:

"Party of the first part [Severson] agrees to subscribe to a number of shares of stock of said corporation at par value thereof, which will equal the net worth of said Standard Sales Company now operated by him, to the exclusion, however, of the real property upon and in which said business is now being conducted.

"Party of the first part shall transfer, set over, and assign unto said corporation each, *all and every property*, right of franchise, buying contracts, selling contracts, and *records* of every kind, nature, or description now used in connection with said Standard Sales Company presently being conducted by him. And the parties hereto do agree that they will, following the organization of said corporation, cause said corporation to accept all of the benefits of said assignments and transfers, *together with all of the liabilities incident thereto*, and party of the first part shall be thereafter relieved from individual liability in connection with any and all such contracts transferred, assigned, and accepted by said corporation to be formed." (Italics ours.)

December 27, 1946, Standard Sales, Inc., was incorporated. Pursuant to the contract, the new corporation acquired the assets and assumed the liabilities of the business, December 30, 1946.

The net worth of the business which, according to the pre-incorporation contract, determined Severson's share of the ownership of the corporation, was $123,900, a figure arrived at by: (1) appraising its entire inventory at cost, an operation in which Jones participated, (2) adding all of its other assets, and (3) subtracting all of its liabilities, including those which are the subject of controversy here, from the total. No value was given to good will.

On January 2, 1947, Severson received 1,239 $100-par-value shares. Jones paid thirty thousand dollars to the corporation and received three hundred $100-par-value shares. Only eight other shares were outstanding.

The closing statement of the sole proprietorship and the opening statement of the corporation were completed February 17, 1947. They included the community property settlement liability and the income tax liability and were submitted to Jones, individually, first, and then, on February 26th, were presented to the board of directors, of which he was a member. At this directors' meeting, the report was discussed and explained by the firm's accountant, particular reference being made to the unpaid income tax liability.

March 13, 1947, Jones, as a director, signed the corporation's check for fifteen thousand dollars to pay the first installment on Severson's 1946 income tax liability. During 1947, the corporation paid the entire income tax liability, with interest. Also, during 1947, the corporation paid to the former Mrs. Severson twenty-four hundred dollars of the balance of twenty-six hundred dollars remaining due her. Jones was a director of the corporation while these liabilities were being paid.

Jones claims that, shortly prior to the July 28, 1947, directors' meeting, he, for the first time, discovered the nature of the challenged liabilities. At this meeting, he demanded that Severson pay to him, in exchange for his three hundred shares, sixty thousand dollars within ten days, plus a penalty of one hundred dollars a day for each day the demand remained unsatisfied. Ninety days after this demand, Jones was discharged as vice-president-secretary of the corporation, in which capacity he had received a salary of six hundred fifty dollars a month.

At the July 28, 1947, directors' meeting, Jones did not formally challenge the payment of the liabilities in question. He first formally challenged the payment of the liabilities in question five months later on December 20, 1947, when he served upon the directors written demand that the directors take action to recover from Severson the payments made by the corporation in satisfaction of the challenged liabilities.

December 26, 1947, the shareholders elected new directors, eliminating Jones. The next day, the new directors

met and unanimously directed the secretary to communicate to Jones the decision to dispense with his services and the board's decision with regard to his demand. The minutes of this action are as follows:

"It was moved by Mr. McFarland and second [sic] by Mr. Neighbor that the secretary make reply to the Notice and Demand made by Carl Jones. The motion was regularly put and *unanimously* carried." (Italics ours.)

Pursuant to this direction, the secretary wrote Jones that the directors refused to take the demanded action.

Jones commenced this action January 13, 1948, praying for accounting by Severson for the respective sums of $40,390.75, paid by the corporation on his 1946 income tax liability, and twenty-four hundred dollars paid by the corporation on his obligation to his former wife, and further praying that Severson be required to repay such sums to the corporation with interest. This would have required the corporation to issue stock at par to Severson for the amount so repaid. At the conclusion of the trial, the court dismissed the action with prejudice.

Jones thereupon appealed and brought the action to this court for a trial *de novo*. To dispose of the case on the merits, it is necessary to construe the meaning of that part of the contract heretofore set out to determine whether Severson's community property settlement liability and his 1946 income tax liability were properly paid by the corporation and deducted from the otherwise net worth of the Standard Sales Company, or whether Severson should be required to refund the amounts so paid and take additional stock equivalent thereto.

We find no particular difficulty or confusion over the question of the identity of Severson the man and Severson the sole trader doing business under the name of Standard Sales Company. It is immaterial whether we use the name Severson or Standard Sales Company so far as the business, as such, is concerned. We think that, for the purpose of this case, the business was a definite integrated entity and, as such, acquired assets and incurred liabilities.

It was the assets pertaining to the business conducted under the name of Standard Sales Company and the liabilities incurred incident to its operation that constituted the subject matter of the preincorporation contract. The assets were to be transferred to the new corporation, and the liabilities were to be assumed by the new corporation.

▪ We think it clear that the tax attributable to the 1946 taxable income of the Standard Sales Company is a liability of the business. We also think it clear that the liability on the property settlement with Mrs. Severson, since it was the condition upon which she released her interest in the business, was incident to the business. We therefore hold that both of those liabilities were liabilities of the Standard Sales Company and, under the terms of the contract, were to be assumed by the corporation. As to these liabilities, the corporation had no choice. The directors and appellant were bound by the commitments of the contract.

One seeming complication, apparent in the record, has no particular significance, as will now be explained. Severson derived six hundred fifty dollars in salary from another source. His 1946 taxable income, of course, included this outside income. However, an examination of the record satisfied us that any part of his total 1946 income attributable to this outside income was more than paid by Severson personally before January 1, 1947, when the corporation took over the business, and that therefore no part of the $40,390.75 here in question is attributable to any outside source. The Standard Sales Company tax exceeded the amount here in question. The outside income is therefore immaterial in this case. (Appellant makes no contention on this point. We mention it because this is a trial *de novo*.)

We therefore hold that the corporation did only what it was bound to do in assuming and paying the two liabilities complained of, and that the result reached by the lower court was, therefore, correct.

This action was brought in the form of a derivative action by a dissenting minority shareholder on behalf of the cor-

poration against Severson, personally, with the directors and the corporation joined as parties defendant. The trial court dismissed the action upon the ground that such derivative action did not lie. He relied on the rule of *Goodwin v. Castleton*, 19 Wn. (2d) 748, 144 P. (2d) 725, 150 A. L. R. 859, which appellant attempts to distinguish from the instant case. Appellant's assignments of error were directed to the claimed failure of the directors to consider their action, the participation of Severson in their meeting and decision, and his domination of them.

◼ Having disposed of the case on its merits, we will only mention in passing the burden of these assignments of error, which we do not reach. We may well do this because appeals in equity are heard *de novo* on the record, and this court independently examines all of the evidence and circumstances revealed by the statement of facts. *Columbia Lbr. Co. v. Bush*, 13 Wn. (2d) 657, 664, 126 P. (2d) 584, 3 Am. Jur. 479, where many precedents are noted; *Vance v. Ingram*, 16 Wn. (2d) 399, 133 P. (2d) 938; *Wingard v. Pierce County*, 23 Wn. (2d) 296, 160 P. (2d) 1009; *Bedgisoff v. Morgan*, 24 Wn. (2d) 971, 167 P. (2d) 422, 163 A. L. R. 513.

◼ On a trial *de novo* on the record, if judgment can be sustained on *any* ground, the cause will not be reversed. The opinion and reasoning of the trial court is not controlling so long as the decree is sustainable on *any* ground. *Rohlinger v. Coletta Land & Orchard Co.*, 64 Wash. 348, 116 Pac. 1095; *Keyes v. Carmack*, 139 Wash. 505, 247 Pac. 1025. See, also, *Shafer v. U. S. Cas. Co.*, 90 Wash. 687, 156 Pac. 861; *Horton Inv. Co. v. Seattle*, 94 Wash. 556, 162 Pac. 989; *Hammond v. Mau*, 69 Wash. 204, 124 Pac. 377, 40 L. R. A. (N.S.) 1142; *In re Rockwood Blvd.*, 170 Wash. 64, 68, 15 P. (2d) 652; *State ex rel. Spokane, etc., Branch v. Justice Court*, 189 Wash. 87, 90, 63 P. (2d) 937.

All of these assignments of error are foreclosed by our construction of the contract.

The judgment is affirmed.

STEINERT and JEFFERS, JJ., concur.

BEALS, J. (concurring in the result)—In my opinion, the payment made by Mr. Severson to his wife, as a portion of the settlement of their community rights, was a matter nowise connected with the business conducted by Mr. Severson. It was an entirely independent matter, concerning only the parties to the agreement.

However, I concur in the result reached by the majority for the reason that appellant had ample opportunity to study the books of account showing Mr. Severson's business and personal affairs, and must have been fully advised concerning this rather insignificant matter before entering into the contract with respondent.

HILL, J., concurs with BEALS, J.